The PEOPLE of the State of Colorado, Petitioner,

v.

**Gary Lee MILLER, Respondent.**

No. 93SC463.

Supreme Court of Colorado.
En Banc.

Feb. 6, 1995.

Rehearing Denied March 6, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for petitioner.

David F. Vela, State Public Defender, David M. Furman, Jamie Grimaldi, Deputy State Public Defenders Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. Miller*, 862 P.2d 1010 (Colo.App. 1993), which reversed the judgment of conviction of Gary Lee Miller for offenses involving the possession and distribution of cocaine. The court of appeals' reversal was based on its holding that a criminal defendant who testifies in his own defense at trial automatically has the right to introduce evidence of his good character for truthfulness under CRE 404(a)(1) and that the trial court erred in denying Miller that right. The court of appeals also held that the trial court erred in allowing the prosecution to present evidence of uncharged other crimes without first obtaining a determination of admissibility outside the presence of the jury even though the prosecution did not present that evidence as part of its case in chief, but only to rebut the defendant's evidence. Because we conclude that the court of appeals erred in its analysis and resolution of those two issues, we reverse and remand the case to that court for consideration of the issues raised before it but not considered because of that court's remand of the case for a new trial.

I.

The prosecution's case was based on evidence of two separate sales of cocaine by Miller on May 10, 1990, and cocaine discovered in his home and in his truck by execution of search warrants later that same day. At Miller's trial, testimony concerning the two sales was presented by a police informant, the informant's cocaine supplier, and police officers who maintained surveillance over the activities of the informant, the supplier, and Miller during the course of the day and who executed the search warrants. Miller testified in his own defense. He denied that he sold cocaine and offered innocent explanations for the activities observed by the police authorities and for the presence of the cocaine discovered in his home and truck.

The evidence presented by the prosecution supported the following version of the events. Police authorities in Loveland, Colorado, en-

tered into an agreement with John Dean Bramwell that he would cooperate with the police by arranging to purchase cocaine from a supplier in exchange for concessions with respect to criminal charges pending against him and members of his family in cases unrelated to the one now before us. On May 10, 1990, the Loveland police attached a body microphone to Bramwell, gave him $1400 in cash that they had photocopied for identification purposes, and placed him under police surveillance. Bramwell went to the apartment of his friend and regular cocaine supplier, Brian McKinnon. He gave McKinnon the $1400 for one ounce of cocaine, and made arrangements to meet him an hour or two later to receive the cocaine. McKinnon then drove to the RC Thunder Speedway (the Speedway), owned by Miller and located in Loveland.

At the Speedway, McKinnon met with Miller and confirmed prior arrangements to purchase an ounce of cocaine for $1400. McKinnon placed the $1400 in the ashtray of Miller's truck and the two agreed that McKinnon would return later to pick up the cocaine. Miller then drove to his home and after a brief stay returned to the Speedway.

Meanwhile, McKinnon left the Speedway, only to return a few hours later. He entered the Speedway business office where Traci Kelley, who was a Speedway employee and Miller's girlfriend, handed him what appeared to be a box of cold medicine. McKinnon then returned to his apartment where Bramwell was waiting. McKinnon gave the box to Bramwell who looked inside and saw a vacuum sealed package containing a white powder. Bramwell then asked McKinnon if it would be possible to purchase five more ounces of cocaine and the two discussed the arrangements necessary for such a transaction. Bramwell left McKinnon's apartment and returned to his own residence where he delivered the box to the Loveland police authorities. The substance in the box proved to be cocaine.

McKinnon called Miller later that same day and arranged to purchase an additional five ounces of cocaine for $5500. They agreed to meet for dinner and complete the purchase. In the meantime, the Loveland police gave Bramwell $5750 in photocopied cash which Bramwell delivered to McKinnon.[1] McKinnon drove to the Speedway, went to dinner with Miller, and during their time together exchanged $5500 for a cracker box that contained cocaine in a vacuum sealed package. McKinnon returned to his own apartment where Bramwell was waiting and delivered the cracker box and its contents to Bramwell. Bramwell inspected the contents of the box and then gave a pre-arranged signal through his body microphone to the police authorities indicating that the exchange had been consummated. The police authorities entered the apartment, seized the cracker box, and arrested McKinnon. The box contained a white substance that later tested positive as cocaine.

The Loveland police authorities next obtained and executed search warrants for the Speedway, for Miller's residence and truck, and for Traci Kelley's truck. At Miller's residence, the police authorities found a small package of cocaine in a filing cabinet, the $1400 used to make the first cocaine purchase, and various other items, such as a vacuum packaging machine and scales. $5500 of the money earlier supplied to Bramwell was found in Kelley's truck. Two other sealed aluminum folds of cocaine were found in a black hip pouch inside Miller's truck.

Both Miller and Kelley were arrested. Miller was charged by an information in Larimer County District Court with two counts of aggravated distribution of cocaine,[2] a class three felony, and one count of possession of cocaine, also a class three felony.[3] Miller pleaded not guilty to each of the three counts. Kelley was separately charged, and the two cases were consolidated for trial.

Prior to his trial, Miller filed a "Motion For Disclosure of Prior Bad Acts," seeking an order requiring the prosecution to "dis-

---

1. McKinnon told Bramwell the price was $5750 so that McKinnon would have $250 for himself.

2. § 18–18–105(3), 8B C.R.S. (1986).

3. § 18–18–105(1)(a), 8B C.R.S. (1986), and § 12–22–310, 5A C.R.S. (1991).

close whether it intends to introduce any evidence in its case-in-chief regarding prior or subsequent criminal conduct against either defendant charged in this case." At a pretrial motions hearing on July 20, 1990, Miller argued that he had filed the motion to determine whether the prosecution intended to offer evidence pursuant to CRE 404(b).[4] The deputy district attorney indicated that he was "aware of no similar transactions specifically that the People will seek to introduce"; consequently, the trial court did not rule on the motion.

The jury trial in the two consolidated cases began on October 24, 1990. The first witness to testify for the prosecution was Brian McKinnon. He first acknowledged that he had received concessions with respect to criminal charges against him in exchange for his truthful testimony in Miller's case. He then related the events that had transpired on May 10, 1990, and explained how he had purchased first one and then five ounces of cocaine from Miller on that date. On cross-examination by Miller's attorney, the following colloquy ensued concerning the nature and extent of McKinnon's acquaintance with Miller:

> DEFENSE COUNSEL (DC): Now, up until May 10, 1990, I believe that you told the police you didn't know Gary Miller's last name; is that correct?
>
> McKinnon: That's correct.
>
> DC: But you knew Gary Miller, right?
>
> McKinnon: Yes.
>
> DC: Isn't it true that you met Gary Miller at the Orchard Raceways, which are [sic] another raceway for radio control cars?
>
> McKinnon: Yes.
>
> DC: You weren't friends with Gary Miller, were you?
>
> McKinnon: Not at that time, no.
>
> DC: In fact, you were just acquaintances through the speedway?
>
> McKinnon: Yeah.

> DC: Did you ever have any discussions with Gary Miller about doing some work at the speedway, like designing a sign or anything like that?
>
> McKinnon: Yes, I did.
>
> DC: Can you tell me about that?
>
> McKinnon: Ah, when he purchased the speedway out there, he was wanting to design up a logo and I had gone to college for drafting, and so we talked about doing up some sketches and doing up a sign for his shop.
>
> DC: And so you had some business discussions with Mr. Miller, then?
>
> McKinnon: Yes.
>
> . . . .
>
> DC: You used to frequent [Miller's] race track to race your cars; isn't that true?
>
> McKinnon: Yes.
>
> DC: Is that basically the total of your relationship pertaining—with Mr. Miller, the car business?
>
> McKinnon: Yes.

In somewhat confusing testimony, McKinnon also admitted on cross-examination that he had purchased cocaine on several previous occasions from an unnamed individual in California, someone other than Miller. The apparent purpose of this part of the cross-examination was to suggest that Miller was not the source of the cocaine obtained by McKinnon on May 10 because McKinnon and Miller were not closely acquainted and McKinnon had another supplier of cocaine.

On redirect examination the prosecution attempted to clarify McKinnon's testimony regarding his previous drug transactions with the other individual and the extent of the relationship between McKinnon and Miller.

> PROSECUTING ATTORNEY (PA): Counsel for Mr. Miller asked you about a number of drug transactions that occurred prior to this one. Do you remember her asking those questions?
>
> McKinnon: Yeah.

---

4. CRE 404(b) provides as follows:
   (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

PA: And you admitted that there was a transaction that occurred two months earlier where two ounces of cocaine were purchased for $850 each?

McKinnon: Yes.

PA: But you also indicated that—this is where I'm confused—was there a transaction for five ounces of ·cocaine sometime previous to this one that occurred?

McKinnon: Yeah.

PA: Was that or was that not with Mr. Miller?

McKinnon: Yes, it was.

PA: It was what?

McKinnon: With Mr. Miller a long time ago.

PA: With the defendant, Gary Miller?

McKinnon: Yes.

PA: How many times had you bought cocaine from Gary Miller?

Before McKinnon could answer the question, Miller's counsel objected and requested a hearing outside of the presence of the jury, to which the trial court agreed.

At the *in camera* hearing, defense counsel argued to the trial court that prior to trial, she had filed a "motion pursuant to CRE 404(b) to exclude any evidence of prior or subsequent criminal activity" by Miller and that the prosecution had "conceded" that motion and advised the trial court that it would not offer any such evidence. Defense counsel also argued that her cross-examination had specifically not included any references to prior drug transactions between Miller and McKinnon and that consequently, the prosecuting attorney had gone beyond the permissible scope of cross-examination in asking McKinnon about prior drug transactions with Miller. Miller's counsel moved for a mistrial or, in the alternative, that McKinnon's responses to the questions about his prior drug transactions with Miller be stricken from the record.[5] Defense counsel also stated that she opposed the admission of the other crimes evidence on the ground that its probative value was outweighed by its potential for prejudice against the defendant.

The prosecution argued that it had no intention of presenting evidence pursuant to CRE 404(b) and that the purpose of its question to McKinnon was to clarify a misperception that may have been created in the jurors' minds by McKinnon's testimony on cross-examination; *i.e.,* that there was no prior relationship between Miller and McKinnon other than racing cars at the Speedway and possibly designing a logo for the business. The prosecution also offered to clarify for the court, during *in camera* questioning of McKinnon, that McKinnon had previously purchased cocaine from an individual in California and, in unrelated transactions, from Miller.

The trial court overruled defense counsel's objection to the question that had precipitated the hearing, reasoning as follows:

Then we have Mr. McKinnon testifying on cross-examination—and I believe to some extent really by both counsel, both defense counsel—that his contact with Mr. Miller was minimal, that it was a casual acquaintance, strong implication that it is almost incredible that somebody would do a serious illegal transaction with a passing stranger. And I think to address that, the door was opened by that and the People are allowed on redirect to address that issue.

And so for that reason, the objection is overruled. There may well be an entitlement by Defendant to a contemporaneous instruction that that evidence is admissible going to the issue of lack of mistake and things of that nature and knowledge of acquaintance of these two individuals and may be considered for that purpose only. If such an instruction is requested, I will give it.

---

5. Kelley's counsel also moved for a mistrial. At a recess following McKinnon's testimony, the trial court granted Kelley's motion for a mistrial and agreed to reschedule Kelley's trial for a separate date. The trial court severed the two cases for trial because it determined that the evidence of Miller's involvement in the drug transactions would be more direct, the cases were not as close to identical as the trial court had originally believed, and there existed the likelihood of substantial prejudice to Kelley should the cases be tried together because of the evidence that would be admissible against Miller but not against Kelley.

McKinnon was then questioned *in camera* regarding his prior purchases of cocaine from Miller and from an unnamed individual in California. McKinnon testified that on a previous occasion, he had purchased at least five ounces of cocaine from Miller. At the conclusion of this questioning, the jury was recalled and the prosecution resumed its redirect examination. In response to the prosecutor's questions, McKinnon admitted that he had purchased cocaine from Miller on "quite a few" occasions prior to May 10, 1990. Miller's counsel did not request a limiting instruction. McKinnon also reconfirmed his earlier testimony that he had also purchased cocaine from an individual in California.

After the prosecution rested its case, defense counsel indicated that Miller would be testifying in his own defense and that numerous other witnesses would be called, including two witnesses who would testify to Miller's reputation in the community for truthfulness. The prosecution objected to the proposed testimony of the two character witnesses. Relying on *People v. Wheatley*, 805 P.2d 1148 (Colo.App.1990), the prosecution argued that Miller was not entitled to introduce evidence of his reputation for truthfulness because in the context of defending a drug offense, that was not a "pertinent" trait of character under CRE 404(a)(1). The prosecution further argued that according to CRE 608, unless and until Miller testified and his character for truthfulness was attacked, he could not introduce such character evidence. The prosecution maintained that according to *Wheatley*, a defendant's character for truthfulness is not attacked simply because a defendant takes the witness stand and is cross-examined at trial. In short, a challenge to a defendant's credibility does not constitute an attack on the defendant's character for truthfulness under CRE 608. The trial court agreed with the prosecution and ruled that unless and until Miller's character for truthfulness was put in issue on cross-examination, he would not be entitled to have witnesses testify on his behalf with respect to his truthful character.

Miller took the stand in his own defense and related an entirely different version of the events that had transpired on May 10, 1990. He denied having sold cocaine to McKinnon on May 10 and offered innocent explanations for the presence of cocaine in his home and truck. Miller explained that he and McKinnon were casual friends who saw each other numerous times at local radio-controlled car races. Miller testified that McKinnon had received money from an insurance settlement and that he was purchasing a used limousine from Miller for $10,000 in order to start a limousine service. The two cash payments on May 10, Miller testified, were payments on the limousine. According to Miller, the box of cold medicine was empty when he last saw it. Also, the cracker box belonging to McKinnon had been left in Miller's truck, and Miller returned the cracker box believing the package within contained egg rolls. Miller also explained that he used the vacuum packaging machine, discovered in the search of his home, for its intended purpose of food packaging and also to package small parts for shipment to customers of his radio-controlled car business. He related that he had loaned the machine to McKinnon on an occasion when McKinnon was considering purchasing such a machine. The scales, Miller testified, were used to weigh the radio-controlled car parts, which were sold in bulk. He explained that the cocaine in the hip pouch found in his truck belonged to McKinnon and that McKinnon had borrowed Miller's truck and had left the pouch in the truck. Miller denied knowledge of the small package of cocaine that had been found in a file cabinet in his home and suggested that it may have been left there by a former boarder.

Miller was cross-examined by the prosecution concerning various aspects of his testimony. At the close of all the evidence, the jury found Miller guilty of one count of aggravated distribution of cocaine, one count of the lesser included offense of distribution of cocaine,[6] and one count of unlawful possession of cocaine. The trial court sentenced Miller to sixteen years of imprisonment with the Department of Corrections for each of the two distribution offenses, and four years

---

**6.** § 18–18–105(1)(a), 8B C.R.S. (1986), and § 12– 22–310, 5A C.R.S. (1991).

for the possession offense, with all of the sentences to run concurrently.

Miller appealed the judgment of conviction to the court of appeals where he argued, among other things, that the trial court erred in excluding the testimony of two character witnesses who would have testified regarding his character trait of truthfulness and in allowing McKinnon to testify that he had engaged in prior drug transactions with Miller. The court of appeals agreed. The court of appeals reasoned that although an accused's character for truthfulness is not pertinent in every case, once an accused has testified, "his or her credibility becomes a prominent issue in the case" and, consequently, the accused's "character for truthfulness becomes a pertinent trait, allowing the accused to introduce evidence of his good character for truthfulness under CRE 404(a)(1)." *People v. Miller*, 862 P.2d 1010, 1013 (Colo.App.1993). The court of appeals determined that the prosecution's case against Miller rested largely on the jury's assessment of the credibility of two important witnesses, McKinnon and Miller, and that because Miller had no prior criminal record, the trial court's error in excluding character evidence that was admissible under CRE 404(a)(1) was not harmless. *Id.*

The court of appeals also held that when the prosecutor elicited testimony from McKinnon on redirect examination that he had previously purchased cocaine from Miller, the prosecution "introduced highly damaging evidence of uncharged similar offenses without [the] benefit of any of the safeguard procedures required," citing *People v. Spoto*, 795 P.2d 1314 (Colo.1990); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); and *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). *Miller*, 862 P.2d at 1014. The court of appeals did not reach the question of whether the trial court abused its discretion by not granting Miller's motion for a mistrial based on the introduction of this evidence because the court of appeals had reversed and remanded the case for retrial based on the

exclusion of character evidence. The court counseled, however, that on retrial, "any attempt by the prosecution to introduce evidence of uncharged similar transactions should be brought to the trial court's attention *before* the fact and outside the presence of the jury in order to allow the trial court to conduct the appropriate inquiry." *Id.*, (emphasis in original).

The prosecution sought and we granted certiorari review of the court of appeals' decision.

## II.

▮ To evaluate the propriety of the court of appeals' decision on the issue of whether Miller had the right to present evidence of his character for truthfulness, we look first to the language of CRE 404(a)(1), which provides as follows:

> (a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same[.] [7]

Thus, subsection (1) provides an exception to the general rule that character evidence is not admissible at criminal trials.[8] The exception permits such evidence when a defendant demonstrates that he or she possesses a character trait that relates to the alleged offense—a "pertinent" trait of his or her character.

Several courts have interpreted the word "pertinent" to be synonymous with "relevant." *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir.1982); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir.1981); *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir.1977). *See also* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5236 at

---

**7.** CRE 404 is identical in all respects to Fed. R.Evid. 404.

**8.** An early draft of Fed.R.Evid. 404 was modified by deleting language that would have allowed the

introduction of evidence of a defendant's character generally. *See* advisory committee's note to Rule 404; Proposed Federal Rules of Evidence 4-04(a)(1), 46 F.R.D. 161, 227 (1969).

384–85 (1978). Accordingly, those courts approach the issue of whether a trait is "pertinent" by deciding whether "the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without evidence of the trait." *Angelini,* 678 F.2d at 381, citing Fed.R.Evid. 401 and *Staggs,* 553 F.2d 1073. Other courts have expressed the requirement somewhat differently, holding that for character evidence to be "pertinent," "some nexus should exist between the particular evidence offered and the crime charged." *State v. Oliviera,* 534 A.2d 867, 869 (R.I.1987) (evidence is "pertinent" if it would "logically influence the issue," quoting Black's Law Dictionary 1030 (5th Ed.1979)). *See also State v. Bogle,* 324 N.C. 190, 376 S.E.2d 745, 751 (1989) ("to be admissible as a 'pertinent' trait of character, the trait must *bear a special relationship to or be involved in the crime charged* ") (emphasis in the original), citing *State v. Squire,* 321 N.C. 541, 364 S.E.2d 354, 358 (1988).

In whatever manner the requirement is formulated, the "prevailing view is that only pertinent traits—those involved in the offense charged—are provable." *McCormick on Evidence* § 191, at 813–14 (John W. Strong ed., 4th ed. 1992) (hereinafter *McCormick on Evidence* ) (footnotes omitted), citing the following examples: *United States v. Jackson,* 588 F.2d 1046 (5th Cir.) (truthfulness not pertinent to narcotics charges), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *State v. Altamirano,* 116 Ariz. 291, 569 P.2d 233 (1977) (brother's testimony as to defendant's part-time employment and fact that defendant was not a heroin addict not pertinent to traits involved in sale of heroin); *State v. Howland,* 157 Kan. 11, 138 P.2d 424 (1943) (veracity not pertinent to rape charge); *State v. Hortman,* 207 Neb. 393, 299 N.W.2d 187 (1980) (veracity not pertinent to charges of assault and abuse of an incompetent). *See also* Fed.R.Evid. 404(a), advisory committee's note, 28 U.S.C. at 746 (1988) ("The limitation to pertinent traits of character, rather than character generally, in paragraphs (1) and (2) is in accordance with the prevailing view."); Lori J. Henkel, Annotation, *Admissibility of Evidence of Pertinent Trait Under Rule 404(a)* of the Uniform Rules of Evidence, 56 A.L.R.4th 402, 409 (1987) ("In determining the admissibility of evidence of an accused's character under Rule 404(a)(1), an initial consideration has been the relationship of the trait to the offense with which the defendant was charged.").

With few exceptions, federal and state courts have permitted defendants to introduce evidence of their law-abiding character. *See, e.g., Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Angelini,* 678 F.2d at 382; *Hewitt,* 634 F.2d at 280; *Darland v. United States,* 626 F.2d 1235, 1238 (5th Cir.1980); *Finnie v. State,* 267 Ark. 638, 593 S.W.2d 32, 33 (1980). *See also McCormick on Evidence* § 191, at 812–14 ("A few general traits, like being law-abiding, seem sufficiently relevant to almost any accusation.").

A different conclusion has been reached with respect to the character trait of truthfulness, however. For example, in *Hewitt,* 634 F.2d 277, the court upheld a district court's decision to exclude proffered evidence of the defendant's character for truthfulness. The defendant had been charged with unlawful possession or receipt of firearms and had chosen not to testify in his own defense at trial. In *Hewitt* the court reasoned that exclusion of the character evidence for truthfulness was proper because

not all criminal indictments impugn the defendant's truthfulness. That trait is only relevant in three situations. (1) The offense charged is *crimen falsi; i.e.,* a lie by the defendant is an element of the crime. *See, e.g., Edgington v. United States,* 1896, 164 U.S. 361, 363, 17 S.Ct. 72, 73, 41 L.Ed. 467, 470; *United States v. Darland,* 5 Cir.1980, 626 F.2d 1235, 1237. (2) The defendant has testified on his own behalf and his credibility has been attacked. *See, e.g., United States v. Jackson,* 5 Cir.1979, 588 F.2d 1046, 1055, *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310. (3) The truth of out-of-court statements made by the defendant has been attacked. *See, e.g., United States v. Lechoco,* D.C.Cir.1976, 542 F.2d 84.

634 F.2d at 279. *Accord Darland,* 626 F.2d at 1237 (in prosecution for bank robbery, the trial court properly excluded evidence of the defendant's reputation for truth and veracity; however, evidence of certain other character traits was improperly excluded at trial because they were "pertinent" to the armed robbery charge).

■ Even in cases where the defendant has testified in his or her own defense at trial, courts have concluded that the defendant does not automatically have the right to present evidence of his character for truthfulness under Rule 404(a)(1). For example, in *United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.1979), the court rejected the defendant's argument that "an accused can always prove the existence of the trait of veracity in his character as a method of supporting his credibility" at trial, concluding instead that a defendant who takes the stand at trial does not automatically acquire the right to bolster his or her own credibility by such proof. In *Jackson* the court reasoned that if the prosecution chooses to attack a defendant's character for truthfulness, the defendant can then introduce evidence of his good character for truthfulness pursuant to Fed.R.Evid. 608(a).[9] *Jackson,* 588 F.2d at 1055. After reviewing the record, the court in *Jackson* arrived at the following conclusion:

> We find no evidence of an attack upon Jackson's character for truthfulness. During the cross-examination the government attorney questioned Jackson closely about his version of the facts and pointed out conflicts between that testimony and the testimony of other witnesses. However, "[t]he mere fact that a witness is contradicted by other evidence in the case does not constitute an attack upon his reputation for truth and veracity." *Kauz v. United States,* 188 F.2d 9, 10 (5th Cir.

1951). *See Homan v. United States,* 279 F.2d 767, 772 (8th Cir.1960).

*Id.* The court held that the district court did not err in excluding the defendant's proffered character evidence.

Similarly, in *United States v. Danehy,* 680 F.2d 1311 (11th Cir.1982), the defendant testified in his own defense at trial and was subjected to vigorous cross-examination that highlighted discrepancies between the defendant's testimony and that of other witnesses. The defendant sought to introduce evidence of his reputation for truthfulness, arguing that his credibility had been attacked. The trial court excluded this evidence. The court in *Danehy* upheld the trial court's ruling, reasoning that Danehy was attempting to offer evidence to bolster his credibility as a witness rather than to show a trait of character that was pertinent to the crime charged[10] and that consequently, Fed.R.Evid. 608, not 404, governed. *Danehy,* 680 F.2d at 1314. The court in *Danehy* concluded as follows:

> Government counsel pointing out inconsistencies in testimony and arguing that the accused's testimony is not credible does not constitute an attack on the accused's reputation for truthfulness within the meaning of Rule 608. Thus, Danehy may not attempt to bolster his testimony by evidence as to his reputation for truthfulness.

*Id.*

This same reasoning was employed by the Colorado Court of Appeals in approving a trial court's refusal to admit opinion evidence of the defendant's truthful character where "the only attack upon the defendant's credibility came during his cross-examination by the prosecutor who pointed out that defendant's testimony contradicted the testimony of other witnesses." *People v. Wheatley,* 805 P.2d 1148, 1149–50 (Colo.App.1990); *see Tevlin v. People,* 715 P.2d 338, 340–41 (Colo.

9. Fed.R.Evid. 608, identical to CRE 608, provides in pertinent part as follows:

(a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admis-

sible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

10. Danehy had been charged with forcibly resisting, opposing, impeding and interfering with members of the coast guard while they were engaged in the performance of their duties.

1986) (defense cross examination of victim-witness in child abuse case held not to have attacked witness's character for truthfulness). Other cases have also adopted this reasoning. *State v. Arnold*, 421 A.2d 932, 937 (Me.1980) (cross-examination of defendant revealing inaccuracies or inconsistencies in some of defendant's testimony did not constitute an attack on defendant's character for truthfulness and thus evidence of defendant's character for truthfulness was properly excluded at trial); *State v. Harper*, 35 Wash.App. 855, 670 P.2d 296, 300 (1983) (unless an accused's character for truthfulness is a trait pertinent to the charge, *e.g.*, fraud, the accused can present evidence of his good reputation for truthfulness only after he becomes a witness and his character for truthfulness has been attacked by reputation evidence or otherwise. Whether his character for truthfulness has been attacked depends on the manner in which the prosecution proceeds, not on the mere fact that the defendant testifies).

■ The rationale for the general rule expressed in CRE 404(a) precluding a defendant from introducing evidence of his or her character for truthfulness at trial unless truthfulness is a trait pertinent to the offense charged is that such character evidence is, at best, of minimal probative value. For instance, an accused may have an excellent reputation in the community for truthfulness but may nonetheless commit assault. Moreover, evidence of an accused's reputation in the community for truthfulness may distract the jury from the issues in question and may be time-consuming and confusing.

The court of appeals in the present case concluded that CRE 608(a) and CRE 404(a)(1) are "conflicting" because CRE 404(a)(1) creates an exception to the rule embodied in CRE 608(a) that forbids a witness from introducing evidence of his or her character for truthfulness unless and until the witness's character for truthfulness has been attacked. The court of appeals concluded that the two rules of evidence are "conflicting" because CRE 404(a)(1) "gives *an accused* the right to introduce evidence of a pertinent character trait," and "once an accused has testified, his or her credibility becomes a prominent issue in the case and, as a result, the accused's character for truthfulness then becomes pertinent." *Miller*, 862 P.2d at 1012, 1013 (emphasis in the original). The court of appeals further determined that CRE 608(a) is a more general provision than CRE 404(a)(1), and, as such, the specific statute controls the general in the event of an irreconcilable conflict between the two. *Id.*

■ We perceive no such conflict. The two rules apply in two entirely different situations. As the cases analyzed above indicate, CRE 404(a)(1) and its federal counterpart provide an exception to the general rule that character evidence is not admissible at trial. CRE 404(a)(1) allows *an accused* to introduce evidence of a "pertinent" trait of character at trial. For example, if a defendant is accused of a violent crime, that defendant has the right to introduce evidence of his or her peaceful, non-violent nature. *See Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728, 734–35 (1985); *Finnie v. State*, 267 Ark. 638, 593 S.W.2d 32, 32 (1980); *State v. Doherty*, 437 A.2d 876 (Me.1981); *State v. Arnold*, 421 A.2d 932, 937–38 (Me.1980). Truthfulness is a pertinent trait only if it is involved in the offense charged. *E.g., Jackson* 588 F.2d 1046.

■ CRE 608 and its federal counterpart apply to *all witnesses*, including the accused. CRE 608 provides for the introduction of evidence of a witness's truthful character only after that witness's character for truthfulness has been attacked. Moreover, an attack on a witness's credibility does not necessarily constitute an attack on that witness's overall character for truthfulness. *Danehy*, 680 F.2d 1311, 1314; *see also Jackson*, 588 F.2d 1046, 1055 (the mere fact that a witness is contradicted by other evidence does not constitute an attack upon his or her character for truthfulness); *Kauz v. United States*, 188 F.2d 9, 10 (5th Cir.1951) (same); *People v. Wheatley*, 805 P.2d 1148, 1148–49 (Colo.App.1990) (something more than the contradiction of the witness's testimony must have occurred for there to be an attack on the witness's character).

The advisory committee's note to Fed. R.Evid. 608(a) provides some guidelines for admitting character evidence:

Character evidence in support of credibility is admissible under the rule only after the witness' character has first been attacked, as has been the case of common law. The enormous needless consumption of time which a contrary practice would entail justifies the limitation. Opinion or reputation that the witness is untruthful specifically qualifies as an attack under the rule, and evidence of misconduct, including conviction of crime, and of corruption also fall within this category. Evidence of bias or interest does not. *Whether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances.*

Fed.R.Evid. 608(a), advisory committee's note, 28 U.S.C. at 758 (1988), (citations omitted and emphasis added); *McCormick on Evidence* § 49, at 176 (the determination of whether a particular cross-examination attacked the witness's character for truthfulness is to be made on a case by case basis).

Miller here relies on *People v. Pratt*, 759 P.2d 676 (Colo.1988), for the proposition that this court has already "recognized" that CRE 404(a)(1) permits an accused who testifies at trial to introduce character evidence for truthfulness. In *Pratt*, we addressed the question of whether the trial court erred in allowing the prosecution, during cross-examination of the defendant's character witnesses for truthfulness, to inquire several times into two incidents of alleged misconduct by the defendant. The issue of the propriety of allowing such character witnesses to testify at the defendant's trial was not presented to

this court; however, we nonetheless stated in dictum that "[t]he defendant properly introduced testimony concerning her good reputation pursuant to CRE 404(a)(1) and CRE 405(a)." *Pratt*, 759 P.2d at 682 (footnote omitted). Additionally, we concluded that the party seeking to impeach the character witnesses must first show that there exists a good faith basis to believe the alleged misconduct actually occurred and that the questions asked on cross-examination of a character witness are relevant. *Pratt*, 759 P.2d at 683–685.

In *Pratt* we did not directly consider whether a defendant who testifies at trial has the right to introduce evidence of his or her character for truthfulness.[11] With the issue now squarely presented, we are persuaded to follow the cases that have fully considered the matter and have held that only pertinent traits, specifically those involved in the offense charged, are provable by means of character evidence. *Jackson*, 588 F.2d 1046; *Altamirano*, 569 P.2d 233; *Howland*, 138 P.2d 424; *Hortman*, 299 N.W.2d 187.

In the present case, Miller asserted that because he would be testifying at trial, his credibility would be challenged and, consequently, he would be entitled to introduce evidence of his character for truthfulness under CRE 608(a)(2). However, as explained above, a defendant does not have the right to introduce character evidence simply by virtue of the fact that the defendant takes the witness stand in his or her own defense at trial. Rather, a defendant has two methods for introducing character evidence at trial. A defendant can seek to introduce character evidence pursuant to CRE 404(a)(1),

---

11. Miller also cites other cases for the proposition that a defendant has the right to introduce character evidence at trial. *See, e.g., United States v. Pujana–Mena*, 949 F.2d 24 (2d Cir. 1991); *United States v. Burke*, 781 F.2d 1234 (7th Cir.1985); *United States v. Fox*, 473 F.2d 131 (D.C.Cir.1972); *Shimon v. United States*, 352 F.2d 449 (D.C.Cir.1965). However, none of these cases directly analyzed the issue of the propriety of introducing such character witnesses at trial or whether the "trait" to which the character witnesses testified was "pertinent" to the charge against the defendant, as required by CRE 404(a)(1) and its federal counterpart. Rather, the decisions focused on other issues related

to the testimony of character witnesses, such as the permissible scope of impeachment questioning on cross-examination, *Shimon*, 352 F.2d at 452–54; *Fox*, 473 F.2d at 135–36, and the weight such testimony should be given in the jury instructions, *Pujana–Mena*, 949 F.2d at 27; *Burke*, 781 F.2d at 1238–39. To the extent that these authorities can be read to permit a testifying defendant automatically to be entitled to offer witnesses as to the defendant's good character for truth and veracity, we elect not to follow them because we find the contrary authorities directly analyzing the issue under CRE 404(a)(1) to be better reasoned and more persuasive.

where that character evidence is "pertinent" to the crime charged, *i.e.*, there is some nexus between the proffered character trait and the crime charged. Or, a defendant can proffer evidence of truthful character pursuant to CRE 608, *after* the defendant has testified and his or her character for truthfulness has been attacked by opinion or reputation evidence or otherwise. Furthermore, under CRE 608, questioning of a defendant's credibility while on the witness stand does not necessarily constitute an attack on that defendant's character for truthfulness for purposes of introducing character evidence for truthfulness under CRE 608(a)(2), and whether a witness's character is attacked will always depend on the circumstances of a particular case.

Neither of the above-mentioned methods for introducing character supports admission of evidence of truthful character under the facts of this case. This is because Miller's character for truthfulness was not a trait "pertinent" to his drug offense and because the prosecution's cross-examination of Miller did not amount to an attack on his character. Moreover, at the conclusion of Miller's testimony, he did not assert that his character for truthfulness had been attacked. He did not again assert his desire to introduce the testimony of character witnesses and did not present argument to the trial court on this issue. Accordingly, the trial court did not err in excluding the testimony of the two proposed character witnesses at Miller's trial.

We conclude, therefore, that the court of appeals erred in holding that a criminal defendant who testifies in his or her own defense at trial automatically has the right to introduce evidence of his or her good character for truthfulness under CRE 404(a)(1), and also conclude that such evidence was not admissible in this case under CRE 608(a)(2).

### III.

The court of appeals also determined that the redirect questioning of McKinnon as

to whether he had bought cocaine from Miller on any previous occasions resulted in the introduction of highly damaging evidence. The court of appeals cautioned that on retrial, any evidence of uncharged similar transactions must be brought to the trial court's attention out of the presence of the jury and prior to the introduction of such evidence so that the trial court can conduct the appropriate inquiry pursuant to this court's directions in *People v. Spoto,* 795 P.2d 1314 (Colo.1990), *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979), and *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959).[12] We agree with the court of appeals' analysis of this issue but find that, in the circumstances of this case, the trial court did conduct the inquiry required by the above-mentioned cases.

As a preliminary matter, our review of this issue is guided by the principle that " '[t]he admission of rebuttal testimony is largely discretionary with the trial court.' " *People v. Cole,* 654 P.2d 830, 834 (Colo.1982) (quoting *People v. Miller,* 37 Colo.App. 294, 297, 549 P.2d 1092, 1096 (1976), *aff'd* 193 Colo. 415, 566 P.2d 1059 (1977), and citing *Wertz v. People,* 160 Colo. 260, 418 P.2d 169 (1966)). With this precept in mind, we turn to an analysis of the law applicable to the issue now before us.

Under Colorado law, evidence of other crimes committed by a defendant is not admissible at trial as proof of the defendant's guilt with respect to the crime charged, a general rule that is subject to narrow exceptions. *People v. Garner,* 806 P.2d 366, 369 (Colo.1991); *People v. Spoto,* 795 P.2d 1314 (Colo.1990); *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979); *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). The limited purposes for which other crimes evidence may be received are set forth in CRE 404(b). *See* n. 4, *supra.* Because of its highly prejudicial nature, we have previously held that other crimes evidence may be admitted as

---

**12.** The court of appeals found it unnecessary to consider whether the trial court abused its discretion in denying Miller's motion for mistrial based on the admission of McKinnon's testimony concerning his prior drug transactions with McKinnon because Miller's convictions were overturned based on the character evidence issue. Having reversed the court of appeals on that latter issue, we address as well its holding on the admissibility of the evidence of prior drug transactions to determine whether a new trial is required.

*direct* evidence at trial only after the trial court, in proceedings conducted outside the presence of the jury,[13] is satisfied

> ... by a preponderance of the evidence that the other crime occurred and that the defendant committed the crime. The Court then must consider whether the other-crime evidence is being offered for a proper purpose and is logically relevant to a material issue in the case, whether the logical relevancy of the evidence is independent of the intermediate inference of the defendant's bad character, and whether the probative value of the other-crime evidence is substantially outweighed by the danger of unfair prejudice to the defendant. If the court is satisfied that these relevancy concerns have been met and that the probative value of the evidence is not outweighed by the danger of unfair prejudice, it should admit the other-crime evidence.

*Garner*, 806 P.2d at 373–74; *accord Spoto*, 795 P.2d 1314. When other crimes evidence qualifies for admission at trial following the above-mentioned inquiry, trial courts are required to instruct the jury, at the time the evidence is admitted, on the limited purpose for which the evidence is being received. *Garner*, 806 P.2d at 374. Additionally, trial courts must repeat this limited-purpose instruction in the general instructions to the jury at the conclusion of the evidence. *Id.* Such a pre-admission inquiry is also required where the prosecution does not intend to introduce other crimes evidence in its case in chief, but seeks to admit such evidence to rebut a witness's testimony. *See People v. Gutierrez*, 622 P.2d 547, 551–52 (Colo.1981).

In *Gutierrez*, this court analyzed the defendant's contention that the trial court had committed error when it admitted other crimes evidence to rebut his alibi defense.

In *Gutierrez*, the defendant had been involved in two separate criminal episodes. The first incident took place on August 2, 1977, between 7:00 and 9:00 p.m., when the defendant and his brother, armed with knives, menaced Heriberto Lopez and later threw incendiary devices through the window of the Lopez home. The second incident took place on August 3, 1977, sometime before 1:00 a.m., when the defendant and his brother assaulted Albert Roybal and burglarized his home. The defendant's trial was severed from that of this brother and the trial court granted the defendant's motion to sever the assault and burglary counts (the Roybal incident) from his trial on the menacing and firebombing counts (the Lopez incident). *Gutierrez*, 622 P.2d at 550.

At his trial for the Lopez incident, the defendant called an alibi witness who testified that he and the defendant had been together from around 11:00 a.m. on August 2 until the early morning hours of August 3. Following a lengthy *in camera* hearing, the prosecution called Albert Roybal and his wife, as well as the police officer who had investigated the Roybal incident, as rebuttal witnesses who could discredit the testimony of the alibi witness. *Id.* After reviewing the trial court's admission of the rebuttal evidence in light of the requirements set forth in *People v. Honey*, 198 Colo. 64, 596 P.2d 751, for the admission of other crimes evidence, we concluded that the evidence of the rebuttal witnesses was properly received. *Gutierrez*, 622 P.2d at 552–53.[14]

The rebuttal evidence presented at trial in the present case was offered for a proper purpose—to refute McKinnon's testimony that the nature of his relationship with Miller was casual and pertained only to radio-con-

---

**13.** CRE 103 also pertains to evidentiary rulings and provides in pertinent part as follows:

(c) *Hearing of jury.* In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

**14.** *Gutierrez* was decided prior to this court's decision in *Garner*, 806 P.2d 366. The test artic-

ulated in *Garner* is quite similar to that found in *Honey*, although the *Garner* test represents the more precise and refined analysis that must be conducted pursuant to CRE 404(b). The decision in *Gutierrez*, coming as it did after adoption of the Colorado Rules of Evidence in 1980, indicated our belief that the trial court there did not violate the requirements of CRE 404(b) in admitting the other crimes evidence.

trolled car racing.[15] As such, the evidence satisfied two criteria enumerated in *Garner*, that the evidence was offered for a proper purpose and was logically relevant to a material issue in the case. *See Gutierrez*, 622 P.2d at 552 (evidence of other crimes evidence was offered for a valid purpose, specifically, to refute, counteract or disprove the defendant's alibi evidence, citing *People v. Lewis*, 180 Colo. 423, 428, 506 P.2d 125, 127 (1973), and *Moore v. People*, 171 Colo. 338, 467 P.2d 50 (1970)).[16] Additionally, the trial court did implicitly determine, based on McKinnon's admission during *in camera* questioning, that the other crimes had occurred and that Miller had committed the crime of selling cocaine to McKinnon on several previous occasions, thus complying with the requirements set forth in both CRE 404(b) and 103(c).

Miller's attorney, during the *in camera* session with the trial court judge, indicated that she also opposed the admission of the other crimes evidence on the ground that its potential for prejudice far outweighed its probative effect. There is every indication that the trial court conducted this balancing, as required by *Garner*, in deciding to admit the evidence. Knowing of the potentially damaging effect that the evidence would have

on Miller's case, the trial court nonetheless stated that evidence of the previous drug transactions between Miller and McKinnon was admissible to rebut the 'almost incredible implication' of McKinnon's testimony that Miller would have conducted such a serious drug transaction "with a passing stranger." Finally, the trial court offered to give a limiting instruction to the jury when the evidence was admitted, but Miller did not accept the offer. This remained true even after the prosecution stated that it would have no objection to a limiting instruction from the trial court regarding the rebuttal evidence.

The prosecution's questioning of McKinnon regarding his prior drug transactions with Miller, prior to approaching the trial court for an admissibility ruling, was improper. However, in light of the trial court's ultimate ruling on the issue of the admissibility of the evidence, the error committed by the prosecution was harmless. It appeared that the prosecution was proceeding on the theory that Miller had "opened the door" to potentially damaging rebuttal testimony. This concept of "opening the door" represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selec-

---

15. Although refutation of other evidence is not specifically listed in CRE 404(b) as a permissible purpose for admission of other crimes evidence, that list of permissible purposes is not exhaustive. See *supra*, n. 4. *McCormick on Evidence*, § 190, at 799 (as Fed.R.Evid. 404(b) indicates, there are numerous other uses to which evidence of criminal acts may be put, and those enumerated are neither mutually exclusive nor collectively exhaustive, citing *United States v. Miller*, 895 F.2d 1431 (D.C.Cir.1990) (to show that witness feared defendant), *cert. denied*, 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990); *United States v. Tafoya*, 757 F.2d 1522, 1525–1528 (5th Cir.1985) (attempted assassinations to show unreported income on theory that "[i]t is unlikely that one would attempt three killings in exchange largely for expenses or continue killings for over a year if not paid for the first one"), *cert. denied*, 474 U.S. 921, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985); *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983) (murder defendant's prior assaults on witness and accomplice to explain why defendant did not report the murder promptly and to counter defendant's insinuation that the accomplice lied to gain immunity), *cert. denied* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); Note, 71 Nw.U.L.Rev. 635 (1976).

16. The present case is distinguishable from *People v. Cole*, 654 P.2d 830, 834 (Colo.1982), wherein we determined that the trial court erred in excluding rebuttal testimony because, in the trial court's view, the evidence would be more prejudicial than probative. In *Cole*, the rebuttal evidence was not "other crimes" evidence, but rather was evidence "that would directly contradict the testimony of the defendant regarding the charged assault." *Id.* The defendant had been charged with assault on a police officer who had intervened in a fight between the defendant and Leon McCoy. The officer was allegedly assaulted by the defendant with a machete when the officer attempted to arrest him. The defendant testified in his own defense at trial and denied using a knife in his fight with McCoy. When the prosecution offered rebuttal evidence through McCoy that would have contradicted that denial, the trial court excluded the evidence on the grounds that it would be more prejudicial than probative. We reversed, concluding that the defendant had "opened the door" and thus had subjected himself to the risk of potentially prejudicial rebuttal evidence, obviating the need for the weighing required by *Honey*. *Id.*

tive presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression. *See People v. Sams,* 685 P.2d 157, 164 (Colo.1984); *People v. Tenorio,* 197 Colo. 137, 145–46, 590 P.2d 952, 958 (1979); *State v. Graham,* 200 Conn. 9, 509 A.2d 493 (1986); *Nelson v. State,* 395 So.2d 176 (Fla.Dist.Ct.App.1980); *State v. Diaz,* 635 So.2d 499 (La.App.1994); *Lockhart v. Commonwealth,* 443 S.E.2d 428 (Va.App.1994); *see also McCormick on Evidence* § 57. *But see, generally,* 21 Charles A. Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure,* § 5039 (1977) (courts are likely to use confusing terms such as "waiver," "estoppel," "opening the door," "fighting fire with fire," and "curative admissibility," when the appropriate action at trial and the appellate level is to analyze such issues pursuant to the requirements set forth in the rules of evidence.) We believe that the admissibility of other crimes evidence, even where a defendant arguably opens the door, should be governed by application of the standards and procedures set forth in *Garner.* Such an approach allows the trial court to evaluate the proffered evidence outside the presence of the jury and thereby minimize the possibility of error while permitting the introduction of the evidence when the *Garner* standards are satisfied. *Cf. Pratt,* 759 P.2d at 684–85 (before cross-examination of defendant's character witnesses concerning other acts of the defendant, trial court should rule on admissibility of such other acts outside the presence of the jury); *Callis v. People,* 692 P.2d 1045, 1051 (Colo.1985) (whether reference to another crime committed by defendant should be excised before statement is presented to jury must be resolved *in camera* ).

In the present case, the trial court did not abuse its discretion in admitting the evidence that on previous occasions Miller had sold cocaine to McKinnon. Although defense counsel did not herself introduce inadmissible other crimes evidence, she questioned McKinnon in a manner that took selective advantage of evidence regarding McKinnon's relationship with Miller and sought to exclude the inadmissible evidence that would place that relationship in its proper context,

revealing the true nature and scope of the friendship.

McKinnon stated on cross-examination that his relationship with Miller had been only a casual and lawful one prior to Miller's arrest. This characterization that they knew one another only informally as fellow remote control race car drivers weakened McKinnon's testimony that Miller twice, on May 10, 1990, sold him illegal drugs in substantial quantities. Thus, the limited testimony on redirect examination was necessary to rebut McKinnon's earlier testimony on the extent of the relationship between Miller and McKinnon and was properly admitted pursuant to CRE 404(b) and the requirements set forth in *People v. Garner,* 806 P.2d 366. The prosecution's statement at the July 20 pretrial hearing that it would not seek to introduce other crimes evidence pursuant to CRE 404(b) cannot reasonably be understood to preclude it from offering such evidence to refute incorrect or misleading evidence presented by the defendant.

We therefore conclude that the trial court did not abuse its discretion in admitting the other crimes evidence during McKinnon's rebuttal testimony. Accordingly, we reverse the holding of the court of appeals.

### IV.

For the foregoing reasons, we reverse the judgment of the court of appeals. However, the court of appeals did not address several issues raised before it by Miller because the case was remanded for retrial. We therefore remand the case to the court of appeals for its consideration of these remaining issues: whether Miller was entitled to an accomplice witness testimony jury instruction, whether the trial court's jury instruction regarding the law of complicity was correct, whether the prosecutor's closing argument infringed on Miller's right to a fair trial, and whether the trial court abused its discretion in sentencing Miller.