## No. 21167.

WILLIAM D. BARKER *v*. THE PEOPLE OF THE
STATE OF COLORADO.
(407 P.2d 34)

Decided November 1, 1965.

HOWARD J. MILLER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, GEORGE H. SIBLEY, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the plaintiff in error by name.

Barker sued out this writ of error to a judgment of conviction entered in the district court upon the verdict of a jury finding him guilty of the crime of forgery. The information in pertinent part charged Barker with falsely uttering and passing at one of the Safeway Stores in Jefferson County as true and genuine a check written on the account of Angelo T. De Carolis at the Jefferson County Bank, "knowing the same to be a false, altered, forged and counterfeited instrument" and with the intent to defraud the Safeway Stores, Inc., De Carolis, and the Jefferson County Bank.

In the summary of argument Barker alleged error as follows: 1. that the evidence is insufficient to sustain his conviction because the state failed to prove *knowledge* on his part that the check was forged and false; 2. that photographs of Barker were not sufficiently identified and authenticated to permit their admission into evidence; and 3. that an oral instruction by the court to the jury in connection with similar transactions was erroneous. We will take up the points in that order.

## 1. THE SUFFICIENCY OF THE EVIDENCE

Testimony of witnesses for the people established that on the day in question, at a Safeway Store

in the Westland Shopping Center in Jefferson County, a man identified as Barker presented a check in the amount of $85.20 on which he was named as the payee and upon which appeared a signature "Angelo T. De Carolis." He said he had no identification with him except a draft card, and the clerk remembered the transaction because of the fact that few persons present such item for identification purposes. The notation "draft card" was made on the back of the check. It was endorsed by Barker. He represented at the time that it was his paycheck. The check was a printed one containing in the upper left hand corner the words: "De Carolis Standard Service 38th and Kipling Ha. 4-9060 Wheatridge, Colorado."

De Carolis testified as follows: That a book of his checks and a check writer had disappeared from his station. He stated that he knew Barker; that he remembered his being in his service station, but that Barker had never been in his employ; that there was no occasion whereby Barker would be entitled to receive any check from him or the service station; and that the signature on the check was not his (De Carolis) signature. Evidence was also presented that the defendant had cashed two other checks on the same day, similarly made out for the same amount of money. At one of the other stores, Barker's picture had been taken to record the transaction.

The defendant offered no evidence on his own behalf and did not testify in the case.

Defendant argues that the possession of and passing of the check is insufficient to establish that he *knew* the check had been forged. However, possession and cashing the check was not the only evidence presented by the people upon which his conviction rests. One of the ways the crime of forgery, C.R.S. 1963, 40-6-1, may be committed is by passing a forged or spurious instrument as true and genuine. *Davenport v. People,* 138 Colo. 291, 332 P.2d 485; *Wright v. People,* 116 Colo. 306,

181 P.2d 447; *People v. McDonald,* 53 Colo. 265, 125 Pac. 114. Misrepresentations made by the accused in uttering the instrument is sufficient evidence of his knowledge of its falsity. Knowledge and intent to defraud may be sufficiently established by all the circumstances. See 37 C.J.S. Forgery § 100.

In this case, in addition to possession and passing of the check, Barker made the false representation that it was a salary check. The other direct evidence is also cogent, namely, that Barker had not been employed in the service station or by the maker of the check; that he had not received any salary from De Carolis; and that he had no money transaction which would have entitled him to receive a check from the maker thereof. The aforementioned facts, coupled with similar transactions at other supermarkets on the same day, which were admitted into evidence for the limited purpose of showing intent, scheme and design to defraud, give a total picture which supports the conviction.

## 2. ADMISSION OF THE PHOTOGRAPHS

▪ The photographic exhibits admitted into evidence were taken by a camera device known as a Regiscope whereby the check offered for cashing and the person presenting it are photographed simultaneously. Both the check and the person conducting the transaction with the store appear on the negative and on the photographic reproduction. The person is photographed twice, once with the front of the check reproduced and again with the person's endorsement, address and identification data showing on the back of the check. The photographs were not taken in connection with the passing of the check, which was the subject matter of the offense charged in the information, but were taken in connection with another of the similar transactions admitted into evidence. The limited purpose for which the other transactions were offered into evidence was detailed to the jury in an oral instruction. On this we will comment later.

Trial counsel did not object to the offering of the photographs into evidence and agreed to their admission for the limited purpose stated in the court's instruction. Their admission also was not assigned as error in the motion for new trial. But lest Barker contend that counsel's action deprived him of proper representation, we hold that the evidence was admissible and that the photographs were sufficiently authenticated. The original check, front and back, were both identified by the store clerk, and the photographs of them were identified by the store clerk as a true and accurate reproduction of the original checks. The method of operating the camera; how it was functioning on the day the photographs were taken; testimony that the likeness which appeared before the camera lens was truly and accurately depicted in the picture; identification of the person shown on the picture as being the same person as the defendant sitting in the courtroom, together established the photographs as being admissible evidence. Indeed, there was no valid objection that counsel could have raised; and even if one had been made, it would have been proper for the court to have overruled it.

*3. THE INSTRUCTION ON SIMILAR TRANSACTIONS*

█ Out of the presence of the jury, the district attorney advised the court that he was going to call witnesses who would testify that Barker had cashed, at other supermarkets in Jefferson County, similar checks of identical amounts, on the same day as the alleged offense charged in the information. So when the first of these witnesses was called to the stand, the court admonished the jury orally as follows:

"THE COURT: Well, ladies and gentlemen, apparently the District Attorney is going to attempt to show other transactions. I want it definitely understood by the jury that these acts are admissible only for the purpose of showing plan, design, intent, *and so-forth,* and nothing else. This Defendant is charged in the Information with a certain act, and he can only be convicted

of that act, if he is convicted at all; not the acts that he is going to submit at this particular time. I want you to understand that. In other words, he is charged with something in the Information, and that's what we are trying today." (Emphasis supplied.)

Because the court used the words "and so-forth" Barker maintains that this broadened the scope of the evidence and removed the limited purpose for which such evidence could be considered by the jury. This argument has no validity. While we do not give complete approbation to the use of the words "and so-forth," it is clear that the only effect of their use was to sum up the specific words — "plan, intent or design" — so as to conjure in the minds of the jury other words synonymous with those used. This is made plain when the court said "and nothing else." and further added that "he can only be convicted of that act" referring to the specific act charged in the information. In addition, the court later gave a written instruction to the jury on "similar transactions" without the words objected to in the oral instruction. The written instruction was proper in all respects.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE SUTTON concur.