The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Anibal MIRALDA, Defendant–Appellant.

No. 97CA0707.

Colorado Court of Appeals,
Div. II.

April 1, 1999.

Rehearing Denied June 17, 1999.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Douglas J. Friednash, Special Assistant Attorney General, Lara G. Delka, Special Assistant Attorney, Denver, Colorado, for plaintiff-appellee.

Opinion by Judge CRISWELL.

Defendant, Anibal Miralda, appeals the judgment entered upon a jury verdict finding him guilty of one count of forgery and one count of possession of a forged instrument. We reverse. At the time of his arrest, defendant was a passenger in a truck which had been pulled over for speeding. While defendant waited in the passenger seat, a police officer approached the driver and asked, in English, for his driver's license, proof of registration, and vehicle insurance. Because the driver responded in Spanish and broken English, the officer repeated his request in both Spanish and English.

The driver then produced a valid Colorado Asbestos Certification Identification card issued pursuant to § 25–7–505, C.R.S.1998, that bore his photograph, proper name, and accurate description. Because the officer was not familiar with this type of identification, he asked the driver for additional identification. The driver then gave the officer what appeared to be a United States Immigration and Naturalization Service (INS) resident alien card, which also bore the driver's photograph, proper name, and an accurate description of him. Nevertheless, upon examination of the card, the officer suspected it to be false; therefore, he requested the assistance of another officer more experienced in identifying false resident alien cards.

A few minutes later, the second officer arrived and confirmed that the driver's resident alien card was, indeed, false, i.e., that, contrary to what the card indicated on its face, it had not in fact been issued by the INS. The driver was then removed from the truck and placed under arrest.

The second officer then contacted defendant, who had remained in the vehicle and, in English, asked him to exit the truck and for identification. Although defendant did not speak much English, he removed his wallet and began going through it. While defendant was doing this, the officer, who had been shining a light on the wallet, observed an INS resident alien card in defendant's wallet. Defendant removed a valid Colorado Asbestos Identification card of the same nature as that of the driver and gave it to the officer. This officer also had never seen this type of identification.

The officer then pointed to the INS resident alien card he had seen in defendant's wallet and said "green card." Defendant handed the card to the officer. That card, too, while bearing defendant's photograph, proper name, and accurate description, proved to be false in that it had not, in fact, been issued by the INS. Defendant was then arrested.

Upon an inventory search of defendant's wallet at the police station, it was discovered that he was also in possession of a social security card. This card, while bearing defendant's proper name, bore a social security

number that had not been issued to him and the card itself had not been issued by the Social Security Administration.

Based on these events, defendant was charged with the two offenses that are at issue her . One count asserted that, with the intent to defraud the *INS*, defendant had made and *uttered* a forged alien resident card. The second count alleged that he had *possessed* a forged alien resident card and a forged social security card with the intent to defraud "another." This latter allegation did not identify the person that defendant had intended to defraud.

## I.

Defendant contends that the evidence produced at trial was insufficient to support a conviction of either of the offenses with which he was charged. We agree.

■ If the sufficiency of the evidence is challenged on appeal, an appellate court must determine whether that evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Schoondermark,* 699 P.2d 411 (Colo.1985). It has been said that the evidence must be "both substantial and sufficient to support the determination of guilt beyond a reasonable doubt." *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988).

Conversely, however, a "modicum" of relevant evidence will not rationally support a conviction beyond a reasonable doubt. Likewise, verdicts may not be based on "guessing, speculation, or conjecture." *People v. Gonzales,* 666 P.2d 123, 128 (Colo.1983).

## A.

The forgery statute with which defendant was charged with having violated, § 18–5–102(1), C.R.S.1998, provides that:

A person commits forgery, if with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

\* \* \* \*

(e)[a] written instrument officially issued or created by a public office, public servant, or government agency....

Here, there was no evidence that would support a finding that defendant had either made, completed, or altered the INS card in question. Rather, it was the prosecution's hypothesis that defendant had "uttered" the card when, at the police officer's demand, he handed it to him. Consequently, the jury was instructed that, to convict defendant, it was necessary to find that he "uttered a written instrument" with the intent to defraud.

However, this instruction did *not* advise the jury that it was necessary to find, as the information alleged, that, at the time defendant uttered the card, he did so with the intent to defraud the *INS*. And, the prosecutor in argument to the jury did not assert that defendant had uttered the card with that intent; the argument was that it was the *police officer* that was defendant's intended victim.

■ Given the specificity of the allegation in the information, the generality of the instruction, and the thrust of the prosecutor's argument, therefore, the jury here was allowed to convict defendant based on an intent not alleged in the charge. This constituted reversible error. *See People v. Simmons,* 973 P.2d 627 (Colo.App.1998).

More important, however, these events are demonstrative of the paucity of the evidence to support the charge of forgery.

To "utter" an instrument is to assert, either directly or indirectly, that it is valid. Hence, the presentation or delivery of a forged instrument to another is generally looked upon as the uttering of such an instrument. *See* § 18–5–101(8), C.R.S.1998; *Black's Law Dictionary* 1716 (6th Ed.1968).

Whether the handing of an instrument to another only at the specific demand of that other constitutes an utterance of that instrument under § 18–5–101(8) we do not decide. However, even if we assume that such delivery constituted an utterance here, there is

simply no evidence that, in complying with the officer's demand, defendant did so with the intent to defraud the INS. If there is any inference that can be drawn as to defendant's intent in handing the card to the officer, it would be that it was the *officer* whom defendant intended to defraud, as the prosecutor argued.

We conclude, therefore, that there was a fatal variance between the offense alleged and the prosecutor's proof and that the proof presented did not support the charged offense. Hence, defendant's conviction of forgery must be reversed.

### B.

We reach a similar conclusion with respect to the evidence presented upon the charge of possession of a forged instrument.

The statute defining this offense, § 18–5–105, C.R.S.1998, requires that a person possess a forged instrument with knowledge that it is forged "and with intent to use [it] to defraud."

■ As noted, the information charging defendant with a violation of this statute did not designate any specific person whom defendant intended to defraud. Defendant, however, does not argue that such a designation is required, and we shall assume, without deciding, that proof of defendant's possession of the two cards with the intent to use them for some fraudulent purpose at any time in the future would be sufficient to support a conviction. Nevertheless, we conclude that the evidence presented here was insufficient to establish that defendant's possession of the forged instruments was with the intent to defraud anyone.

■ Intent may, of course, be established from circumstantial evidence and from the inferences that may reasonably be drawn from those circumstances. *Barker v. People,* 158 Colo. 381, 407 P.2d 34 (1965). Here, however, there were no "circumstances" established by the evidence other than that defendant possessed a forged INS resident alien card that contained an accurate photograph and description of him; that he handed the INS card to the officer when a demand to do so was made upon him; and that

he also possessed a false social security card. There was no proof that defendant had ever used either of the cards for any purpose (such as support for a job application), nor was there any proof that defendant's status was such that it could be inferred that he would be required to use either instrument to misrepresent that status.

■ Our supreme court has made clear that, absent an intent to defraud, mere possession of a forged instrument is insufficient to sustain a conviction. *People v. Colosacco,* 177 Colo. 219, 493 P.2d 650 (1972).

Further, contrary to the People's argument here, neither *Cameron v. People,* 170 Colo. 504, 462 P.2d 606 (1969) nor *People v. White,* 804 P.2d 247 (Colo.App.1990) is dispositive of this issue. In each of those cases, the defendant had passed or attempted to pass a forged instrument with knowledge of its falsity. That evidence was sufficient to allow the inference that the defendant in each case possessed the requisite intent to defraud.

Here, in contrast, there was no evidence that defendant had attempted to make use of either card for any purpose.

Further, courts faced with a similar claim of insufficiency of evidence to establish the specific intent required to violate similar statutes have emphasized, consistent with *People v. Colosacco, supra,* that such intent may not be inferred from the mere fact of possession. To support a conviction, extrinsic circumstances must be considered. *See United States v. Alejandro,* 118 F.3d 1518 (11th Cir.1997); *United States v. Rohn,* 964 F.2d 310 (4th Cir.1992); *State v. Lores,* 512 N.W.2d 618 (Minn.App.1994); *State v. Esquivel,* 71 Wash.App. 868, 863 P.2d 113 (1993).

In some instances, these circumstances have related to the defendant's *status* as indicative of that required intent. *See United States v. Rohn, supra* (defendant, who was wanted on several criminal warrants, was using an assumed name and had numerous forged identification cards of various nature in her possession); *State v. Lores, supra*

(illegal alien possessed forged INS alien resident card).

In other instances, the relevant circumstances related to the manner of possession or the use made of the instruments. *See United States v. Alejandro, supra* (defendant possessed 108 false birth certificates, within a rolled newspaper, which he knew were false, and the explanation he gave for such possession was rejected by jury).

■ However, if no extrinsic circumstances are presented that would allow a reasonable inference to be drawn that the possessor entertained the requisite intent, the evidence is insufficient to sustain a conviction. *State v. Lores, supra,* 512 N.W.2d at 621 ("Possession alone does not constitute intent to utter, because the statute requires possession with intent to utter.").

Here, the People presented no evidence of any extrinsic circumstances. The undisputed evidence is that, while defendant had the INS card in his wallet, he made no attempt to make use of it; the officer obtained it only because he demanded it.

Further, because this card contained accurate information respecting defendant's identity, the card could not have been used by him to misrepresent any fact respecting his identity. The only possible fact that the card could have been used to represent was that defendant was a legal resident of this country. *See State v. Esquivel, supra,* 71 Wash. App. at 872, 863 P.2d at 115 ("Indeed, the [INS resident alien cards'] only value would be to falsely represent the defendants' right to legally be in this country."). Consistent with this view, the People have not suggested any other way in which defendant could have made use of the card to defraud someone.

The People here presented no proof that, at the time he was in possession of the card in question, defendant was *not* a legal resident. This was a fatal deficiency because, if he *were* a legal resident, the INS card, although forged, could not have been used by him to misrepresent *any* fact. Yet, there is no evidence in this record from which it could reasonably be inferred that defendant was illegally present in this country.

Given the paucity of this evidence, then, we conclude that the People failed to establish a *prima facie* case that defendant violated § 18–5–105, and his conviction of this offense must also be reversed.

## II.

Having concluded that the People failed to present evidence that was legally sufficient to sustain defendant's convictions on either count, we are presented with the issue whether defendant can be retried on either charge. We conclude that he cannot.

■ As a general rule, if the prosecution is provided with one fair opportunity to present evidence sufficient to sustain a conviction, the guarantees against double jeopardy contained within both the Fifth Amendment and Colo. Const. art. II, § 18, prohibit allowing the prosecution a second chance. Hence, it is generally true that, if a conviction is reversed on appeal because of an insufficiency of the evidence, no retrial may occur. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *see People v. Serravo,* 823 P.2d 128 (Colo.1992) (state constitution interpreted more expansively than federal).

■ This general rule, however, does not apply if the insufficiency of the evidence results from an erroneous ruling of the trial court that excludes evidence proffered by the prosecution. Such a circumstance is considered as a mere trial error. *Webster v. State,* 274 Ind. 668, 413 N.E.2d 898 (1980). *See Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *State v. Boone,* 284 Md. 1, 393 A.2d 1361 (1978).

■ Here, no action by the defense nor any ruling by the court prevented the People from presenting evidence upon defendant's alleged intent to defraud the INS under the forgery count. Hence, there can be no basis for authorizing a retrial of this charge.

With respect to the possession count, however, the defense moved to prevent the People from presenting any evidence respecting defendant's status as an illegal alien, arguing that such evidence would be improperly prejudicial. Had this evidence been received, it would have allowed a proper inference that

defendant intended to use the forged INS alien resident card to misrepresent his status as a legal alien. Hence, had the court barred the People from presenting this evidence, a retrial might have been appropriate.

However, the court was not called upon to rule on defendant's motion. Rather, the prosecutor conceded, not only that proof of such status would be prejudicial, but also that such evidence was not relevant to any issue presented under either count.

Given the prosecutor's stated position, therefore, the failure of the People to present such evidence cannot be said to have resulted from any failure of opportunity to present the evidence. It was, on the contrary, a voluntary choice not to seek its introduction. Under such circumstances, we conclude that a retrial may not be held on the charge of possession of a forged instrument.

The judgment of conviction of both counts is reversed.

Judge PLANK and Judge KAPELKE concur.