**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JON STEPHAN VAUPEL,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 11-1348
(D.C. No. 1:07-CV-01443-PAB-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

Jon Stephan Vaupel appeals from the district court's denial of his motion to file a second amended complaint and its dismissal of his action. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND[1]

Vaupel is an Australian citizen.  He entered the United States a number of times between 1995 and 2003 under the Visa Waiver Program.[2]  In 2002, he married an American citizen, Stacey Schwab, in Australia.  Schwab became pregnant and returned to the United States in late 2002 so that the couple's son could be born there. When she encountered serious complications with her pregnancy, Vaupel flew to the United States.  On January 31, 2003, he applied for admission under the Visa Waiver Program but was denied due to an overstay in 1997.  He was, however, granted humanitarian parole through March 7, 2003.  Vaupel and his wife then filed documents to change his immigration status to lawful permanent resident (LPR).  On March 12, 2003, the couple's son was born.  In October 2003, the family moved from Texas to Denver, Colorado.  In February 2004, Vaupel was granted temporary LPR status.[3]  In April, Schwab was charged with child abuse and harassment against

---

[1]    We draw the facts largely from Vaupel's first amended complaint in this action, Doc. 10, *see* Supp. App. at 1-83, as supplemented or corrected by public documents elsewhere in the record.  Although not captioned as such, we refer to this complaint as Vaupel's first amended complaint because he filed it in response to the district court's order stating that he had not filed his initial complaint on the proper form.

[2]    Under the Visa Waiver Program, nonimmigrant visitors from certain participating countries may enter and remain in the United States for a period not exceeding 90 days without having to obtain and present a visa.  *See* 8 U.S.C. § 1187(a).

[3]    In his second proposed amended complaint, Vaupel alleged that he was granted a conditional permanent residency valid until February 5, 2006.

Vaupel and their son. She pleaded guilty to harassment. In June, Vaupel was arrested on multiple charges based on false allegations by Schwab. He was released on bond.

On the same day Vaupel was released on bond, Schwab withdrew her immigration sponsorship for his application to adjust status to LPR. Mario Ortiz, who was then the District Director of the Denver District Office of the United States Customs and Immigration Service (USCIS), signed a letter explaining that Vaupel's application was denied because Schwab had withdrawn her visa petition. In early July, Vaupel filed for divorce after discovering that Schwab was having an affair with Ortiz.[4]

In October 2004, Vaupel filed a petition to adjust his status to LPR under the Violence Against Women Act as an abused spouse of a United States citizen. The next day, Vaupel was arrested and detained by officers of Immigration and Customs Enforcement (ICE). ICE issued a Determination of Inadmissibility and a Notice and Order of Expedited Removal. In November, Vaupel was transferred to the custody of the Jefferson County, Colorado, Sheriff's Office to answer the criminal charges Schwab had filed. ICE officer John Samson placed a no-hold bond on Vaupel and argued to the state-court judge that unless the court revoked Vaupel's bond, ICE would promptly remove Vaupel. The judge then revoked Vaupel's bond. Ultimately,

---

[4] According to Vaupel's proposed second amended complaint, Ortiz and Schwab married in July 2007.

Vaupel pleaded guilty to one count of disorderly conduct, and the remaining charges were dismissed.[5]

Next, Vaupel, still in ICE custody, sought federal habeas relief in February 2005. The district court denied his petition, and Vaupel was removed on February 25, 2007. We dismissed his appeal from the denial of his habeas petition for lack of jurisdiction. *Vaupel v. Ortiz*, 244 F. App'x 892, 893 (10th Cir. 2007). Meanwhile, in 2006, Vaupel was found not guilty on charges of attempted murder one and solicitation of murder one, which allegedly were based on fabrications by Ortiz.

Vaupel filed his complaint in this civil action pro se in July 2007 and an amended complaint in September 2007. He asserted five claims against the United States under the Federal Tort Claims Act (FTCA) arising from the denial of his application to adjust to LPR status, his detention, and his removal: negligence, false arrest, false imprisonment, abuse of process, and malicious prosecution. He named only the United States as a defendant, presumably under the principle that "[t]he United States is the only proper defendant in an FTCA action," *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001). But he repeatedly referred in the body of his first amended complaint to other government actors, including Ortiz and Samson, as defendants or respondents.

---

[5] Vaupel alleged that all charges were dismissed due to lack of evidence, but this allegation is contradicted by court records attached to a motion to dismiss filed by the United States. In any event, what actually happened is immaterial to our disposition of this appeal.

The United States filed a motion to dismiss, which the district court denied on June 12, 2008, concluding that the better course was "to request the Clerk of Court to canvass interested counsel as to their willingness to represent Mr. Vaupel, and to allow Mr. Vaupel to amend his complaint." App. at 249. The court ordered that if no attorney entered an appearance on Vaupel's behalf by September 30, 2008, Vaupel would have until October 30, 2008, to file an amended complaint or face dismissal for failure to prosecute. In December 2008, after Vaupel had failed to find an attorney or file an amended complaint by the October 30 deadline, the magistrate judge issued a recommendation that the case be administratively closed for six months, subject to reopening upon a showing of good cause.

The district court rejected the recommendation as moot after counsel entered an appearance on behalf of Vaupel in September 2010. Counsel then filed a proposed second amended complaint in December 2010. The magistrate judge struck that complaint because it was not accompanied by a motion for leave to file an amended complaint, as previously ordered. Vaupel then filed both a motion for leave and a shorter version of his proposed second amended complaint in which he added Ortiz and Samson as defendants and asserted eight FTCA claims. He invoked a number of bases for jurisdiction, including the FTCA and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[6] The

_____

[6] "Under *Bivens*, an individual has a cause of action against a federal official in his individual capacity for damages arising out of the official's violation of the
(continued)

- 5 -

government filed an opposition, Vaupel replied, and the government was permitted to file a surreply.

The motion to file the amended complaint was referred to the magistrate judge, who recommended that the motion be denied and the action be dismissed. The district court adopted the recommendation over Vaupel's objections. The court first concluded that Vaupel had not properly pleaded a *Bivens* claim. The court observed that although Vaupel had alluded to the denial of due process two times in his factual allegations, he had not included a claim for denial of due process and failed to identify what process he was allegedly denied. The court declined to look for missing factual allegations supporting a *Bivens* claim in either the stricken proposed amended complaint or Vaupel's reply to the government's opposition.

Turning to the FTCA claims, the district court concluded that two of the intentional tort claims—fraud and interference with contract—were subject to dismissal because the United States had not waived its sovereign immunity for such claims. *See* 28 U.S.C. § 2680(h). As to the other two intentional tort claims—abuse of process and false imprisonment—the court observed that the FTCA waives the United States' sovereign immunity to the extent such claims are based on the "acts or omissions of investigative or law enforcement officers of the United States

---

United States Constitution under color of federal law or authority." *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000) (emphasis omitted). "Similarly, the FTCA allows injured persons to sue for torts committed by federal employees while acting within the scope of their office or employment. 28 U.S.C. § 1346(b)(1)." *Id.*

Government," defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Thus, the viability of those claims depended on whether Ortiz or Samson, the only federal officers identified in the proposed second amended complaint, were investigative or law enforcement officers.

The court concluded that Oritz was not an investigative or law enforcement officer based on an affidavit from Ortiz attesting as much. The court rejected Vaupel's argument that it was precluded from considering such evidence unless it was in the context of summary judgment, noting that under *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), it had discretion to consider a wide variety of affidavits and other documents pertaining to subject matter jurisdiction without the necessity of a summary judgment proceeding.[7] The court also considered a job description Vaupel submitted for a Supervisory Adjudications Officer at the USCIS but concluded that the description did not show that such officers are investigative or law enforcement officers under § 2680(h).

Regarding Samson, the court noted that he had admitted in an affidavit that he was an investigative or law enforcement officer but concluded that it would be futile to allow the abuse of process claim against him, as amended, because it was subject

---

[7]     This standard is typically cited in the context of converting a motion to dismiss to a motion for summary judgment. Here however, there was no pending motion to dismiss with regard to the proposed second amended complaint, only the government's opposition to amendment.

to dismissal. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (explaining that "[a] proposed amended complaint is futile if the complaint, as amended, would be subject to dismissal"). One element of an abuse of process claim under Colorado law is "an ulterior purpose for the use of a judicial proceeding," *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006),[8] and Vaupel had not alleged any facts showing that Samson had an ulterior motive in placing a detainer on Vaupel and convincing the Jefferson County judge to revoke his bond. The court reached the same conclusion with respect to the amended false imprisonment claim against Samson, concluding that it lacked factual support for the essential element of unlawfulness. *See McDonald v. Lakewood Country Club*, 461 P.2d 437, 440 (Colo. 1969) (listing elements of false imprisonment claim, including unlawfulness of restraint).

The district court then addressed the other four FTCA claims—negligence, intentional infliction of emotional distress (IIED), conspiracy, and breach of fiduciary duty. As to the negligence claim, the court concluded that Vaupel failed to exhaust administrative remedies, which is a jurisdictional bar to judicial review under the FTCA, *see Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991); *see also* 28 U.S.C. § 2401(b) ("A tort claim against the United

---

[8]    FTCA claims are governed by "the law of the state in which the allegedly tortious act or omission occurred. 28 U.S.C. § 1346(b)(1)." *Staggs v. United States ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 n.3 (10th Cir. 2005). Thus, Colorado law governs Vaupel's FTCA claims.

States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). Next, the court agreed with the magistrate judge that Vaupel failed to allege extreme and outrageous conduct necessary to support his IIED claim. *See Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009) (requiring extreme and outrageous conduct for IIED claim). The court observed that the district court in Vaupel's habeas proceeding had found that his detention was lawful, and although the habeas court was troubled by the affair between Ortiz and Schwab, it found that Ortiz had not improperly denied Vaupel's application to adjust status because the denial occurred after Schwab had withdrawn her petition in support. *See Vaupel v. Ortiz*, No. 05-cv-00327-WDM-MJW, 2005 WL 1799360, at *1-*2 (D. Colo. July 28, 2005) (unpub.). Finally, the district court concluded that Vaupel failed to allege any facts showing a conspiracy between two or more persons, *see Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 674 (Colo. App. 1999) (stating that civil conspiracy requires "agreement by two or more persons"), or that the United States or any of the immigration officers involved in the case owed him any fiduciary duty.

Because the proposed amended complaint was futile, the district court denied Vaupel's motion for leave to file it. The court then concluded that the case should be dismissed because a prior order instructed Vaupel to file an amended complaint after he was appointed counsel, and Vaupel had admitted that his first amended complaint was deficient. This appeal followed.

## II.    DISCUSSION

We review the "denial of a motion to amend a pleading for abuse of discretion." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1249 (10th Cir. 2009).  But "when denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility."  *Id.*

We first agree with the district court's conclusion that Vaupel failed to adequately plead a *Bivens* claim in the proposed second amended complaint.  Vaupel did not assert any constitutional claims, even in the formulaic manner in which he pleaded his eight FTCA claims, and his isolated jurisdictional reference to *Bivens* is insufficient to adequately present a constitutional claim.  Further, as the district court noted, he made only two passing references to constitutional rights in the entirety of the proposed second amended complaint, both of which occurred before any mention of Ortiz's or Samson's alleged conduct.  In the first, Vaupel alleged that "[r]escission of [his legal permanent] residency required due process of law."  App. at 282.  In the second, he alleged that "it was unlawful to divest him of his residency without due process of law."  *Id.*  Vaupel did not allege that Ortiz, Samson, or any other federal officer violated his due process rights, and he did not identify any process to which he claimed entitlement.  Vaupel did allege that Ortiz lacked authority to rescind his lawful permanent residency and that ICE lacked authority to subject him to mandatory detention and expedited removal, but he never tied that alleged lack of

authority to any constitutional deprivation. In sum, we see no abuse of discretion in the district court's determination that Vaupel failed to include a *Bivens* claim.

As to the district court's refusal to permit amendment of the FTCA claims, the government argues that Vaupel has waived appellate review of many of them by failing to make adequately specific objections to the magistrate judge's recommendation (and as to the negligence claim, to make any objection at all). The government also argues that Vaupel's appellate arguments are insufficient to invoke appellate review on a number of the FTCA claims. While we might be inclined to agree with the government's position, we need not conclusively decide these matters, for we agree with the district court's rulings regarding sovereign immunity and futility, and therefore affirm those rulings for substantially the same reasons set forth in the district court's order dismissing the case.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge