The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 25, 2026

**2026 COA 52**

**No. 24CA1102, *People v. Schmidt* — Crimes — Forgery — Attempt to Influence a Public Servant**

A division of the court of appeals disagrees with *People v. Carian*, 2017 COA 106, ¶ 26, which held that forgery under section 18-5-102(1)(d), C.R.S. 2025, applies only to documents filed "pursuant to a legal mandate."  In addition, the division clarifies that the crime of attempt to influence a public servant does not require proof that the public servant had actual authority to act on the matter under consideration.

COLORADO COURT OF APPEALS                    **2026 COA 52**

---

Court of Appeals No. 24CA1102
Boulder County District Court No. 23CR673
Honorable Stephen E. Howard, Judge
Honorable Michael J. Vallejos, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles M. Schmidt,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

Announced June 25, 2026

---

Philip J. Weiser, Attorney General, Rachel Lieb, Assistant Attorney General II, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Charles M. Schmidt, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempting to influence a public servant and forgery after he tendered to a district court judge, in a separate criminal case, a falsified document purporting to confirm his completion of required useful public service hours.  Among other claims, Schmidt argues that his forgery conviction must be vacated because the prosecution did not prove that the falsified document was an instrument filed "pursuant to a legal mandate" as required by *People v. Carian*, 2017 COA 106, ¶ 26.  Because we disagree with the *Carian* division's interpretation of the relevant statutory language, we reject that claim.

¶ 2     We also reject Schmidt's challenge to the sufficiency of the evidence supporting the conviction for attempt to influence a public servant.  In doing so, we hold — for the first time in a published appellate decision — that in proving that a defendant attempted to influence a public servant "concerning any matter which is to be considered or performed by the public servant," § 18-8-306, C.R.S. 2025, the prosecution need not prove that the public servant had actual authority to act on the matter under consideration.

¶ 3     However, because we conclude that the trial court improperly precluded Schmidt from introducing certain evidence pertinent to both charges, we reverse and remand for a new trial.

## I.     Background

¶ 4     Schmidt, who had been working as a bounty hunter, was serving a probation sentence after assaulting someone while trying to apprehend them.  After allegedly violating the terms of his probation, Schmidt appeared at a probation revocation resentencing hearing.  He submitted a letter to the district court, through his attorney, attesting that he had completed fifty hours of useful public service, which had been a condition of his original probation sentence (the public service letter).  Though the public service letter had a Salvation Army logo on it, it did not appear to be on letterhead, and the body of the letter was replete with misspellings and punctuation and grammatical errors.  The district court questioned the validity of the public service letter but reinstated Schmidt's probation anyway.

¶ 5     Following an investigation, the prosecution concluded that Schmidt had forged the public service letter "to be used to [his] advantage to convince [t]he [c]ourt that his community service was

2

completed and to bolster his argument to the court regarding his probation status." The prosecution charged Schmidt with attempting to influence a public servant and forgery.

¶ 6 Schmidt's defense theory at trial was that he completed his required public service hours and submitted what he believed to be valid proof of having done so to the court in the form of his public service letter. Schmidt's timeline for completing his public service hours fell between late 2020 to early 2021 — during the COVID-19 pandemic.

¶ 7 Schmidt testified that he approached his public service hours cautiously because he was immunosuppressed. These precautions included wearing a mask and staying away from others while completing his work at a Salvation Army food bank. Schmidt also said that he had back surgery during the same period. Schmidt testified that he filed a motion with the court to modify his probation because he was uncertain that he would be able to complete the public service hours before the court-imposed deadline due to his physical limitations following his surgery.

¶ 8 On the morning of the third day of trial, a division of this court issued an opinion addressing Schmidt's appeal of his probation

3

resentencing. In *People v. Schmidt,* (Colo. App. No. 23CA0485, Feb. 22, 2024) (not published pursuant to C.A.R. 35(e)) (*Schmidt I*), the division determined that, contrary to the district court's understanding, the district court had not stayed Schmidt's sentence during the pendency of a prior appeal involving his probation sentence.[1] Thus, his probation sentence had expired before the probation department moved to revoke it. As a result, the division concluded that "the district court lacked jurisdiction to revoke Schmidt's probation and resentence him based on the new offense that he allegedly committed after his probation had expired" and vacated the district court's order resentencing him to sixty days in jail and two years of probation. *Id.*, slip op. at ¶¶ 19-21.

¶ 9     Defense counsel requested a mistrial on the attempt to influence a public servant and forgery charges, noting that the "case here is completely premised on a misapplication of the law." The district court acknowledged that the opinion raised "legitimate

_____

[1] Schmidt had appealed the district court's denial of his request to terminate probation early and its order requiring him to serve eight days on electronic home monitoring.

issues," but it nevertheless denied the request and moved forward with the proceedings. A jury convicted Schmidt on both counts.

¶ 10    Schmidt raises three issues on appeal. He asserts that there was insufficient evidence to convict him of either charge. He contends that the trial court[2] erred by prohibiting him from testifying about his own medical diagnoses. And he argues that the trial court should have permitted him to present witnesses who would testify regarding his character for truthfulness.

## II.    Sufficiency of the Evidence

¶ 11    Schmidt contends that the prosecution failed to present sufficient evidence that he attempted to influence a public servant or committed forgery. We disagree.

### A.    Standard of Review and Applicable Law

¶ 12    "The Due Process Clauses of the United States and Colorado Constitutions require proof of guilt beyond a reasonable doubt on

---

[2] The judge who presided over Schmidt's trial on the attempt to influence a public servant and forgery charges was not the same judge to whom Schmidt had provided the public service letter. For the sake of clarity, we refer to the court before which Schmidt was tried on these charges as "the trial court" and the court before which Schmidt's probation revocation proceedings occurred — and to which Schmidt tendered the public service letter — as "the district court."

each of the essential elements of a crime." *People v. Duncan,* 109 P.3d 1044, 1045 (Colo. App. 2004); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25.  A defendant challenging the sufficiency of the evidence is "asserting that the prosecution has not proven every fact necessary to establish the crime at issue, and thus, it has not established that the defendant, in fact, committed a crime." *McCoy v. People,* 2019 CO 44, ¶ 20.

¶ 13     When considering a sufficiency of the evidence claim, "[w]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction." *Clark v. People,* 232 P.3d 1287, 1291 (Colo. 2010).  In doing so, we apply the substantial evidence test, in which "we ask whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Gorostieta v. People,* 2022 CO 41, ¶ 16 (quoting *People v. Harrison,* 2020 CO 57, ¶ 32).  The same standard of review applies to a sufficiency challenge based on a purely legal question, such as statutory construction.  *McCoy,* ¶ 31.

¶ 14   Generally, "the prosecution is provided with one fair opportunity to present evidence sufficient to sustain a conviction." *People v. Miralda*, 981 P.2d 676, 680 (Colo. App. 1999). Consequently, unless some action by the defense or ruling by the court prevented the prosecution from presenting evidence, vacatur of a conviction due to insufficiency of the evidence bars retrial of the defendant on the charges. *Id.*

¶ 15   "In construing a statute, we interpret the plain language of the statute to give full effect to the intent of the General Assembly." *People v. Griego*, 2018 CO 5, ¶ 25. "When the statutory language is clear, we apply the plain and ordinary meaning of the provision." *Id.* "In doing so, we give consistent, harmonious, and sensible effect to each part of the statute, and we interpret every word, rendering no words or phrases superfluous and construing undefined words and phrases according to their common usage." *Id.*

### B.   Attempt to Influence a Public Servant

¶ 16   Schmidt argues the evidence was insufficient to prove that he attempted to influence a public servant. Specifically, he contends that the "evidence can only be sufficient if the public servant had the authority to act for the government."

7

¶ 17     Section 18-8-306 provides that

> [a]ny person who attempts to influence any public servant by means of deceit . . . , with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by the public servant . . . , commits a class 4 felony.

¶ 18     Schmidt does not contest the district court judge's status as a "public servant."  And notwithstanding the People's focus on the issue in their appellate briefing, Schmidt does not challenge the legal conclusion that a "defendant doesn't have to successfully influence a public servant" to be convicted of this offense.  Rather, the fulcrum on which this challenge hinges is the statutory phrase "concerning any matter which is to be considered or performed by the public servant."  *Id.*

¶ 19     Schmidt argues that "no evidence presented by the prosecution in this case could overcome [the *Schmidt I* division's] no-jurisdiction finding, [because it] negated the 'matter which is to be considered or performed' element of the offense."  The People counter that the statutory language is broad, that there is no dispute that "probation resentencing is a matter within the consideration of a trial court," and that "the [district] court

8

considered the letter in resentencing Schmidt." They further contend that Schmidt's interpretation of the statutory language would "lead to an absurd result [because] [i]t would essentially grant a defendant a free pass if he attempted to influence a public servant but later found out the public servant did not have the authority to do what the defendant wanted."

¶ 20     To assess this issue, we look to the language of the statute, which the jury instruction on the charge tracked in laying out the elements for the jurors to consider. (Notably, Schmidt does not contend that this instruction was erroneous.) The trial court instructed the jurors that, to convict Schmidt of attempt to influence a public servant, they had to be convinced beyond a reasonable doubt

1)  [t]hat the defendant,

2)  on or about March 16, 2023,

3)  with the intent,

4)  to alter or affect any public servant's decision, vote, opinion, or action concerning any matter which was to be considered or performed by the public servant . . . ,

5)  attempted to influence the public servant by means of deceit.

9

¶ 21    A close analysis of this instruction reveals two things of note. First, it applied the mens rea of "intent" to each element of the offense. *See People v. Hoggard*, 2017 COA 88, ¶ 40, *aff'd on other grounds*, 2020 CO 54. This means that a conviction on this count required that Schmidt intended to do three things: (1) alter or affect any public servant's decision (or vote or opinion or action); (2) attempt to influence the public servant;[3] and (3) do so by means of deceit. *See id.* at ¶ 42.

¶ 22    Second, the phrase, "concerning any matter which is to be considered or performed by the public servant," is not a separate element to be proved. § 18-8-306. Rather, as relevant to this case, it is to be read in conjunction with the word "action" and aims to

---

[3] "Attempt" in this context is not the same as the "substantial step" required under the statutory definition of criminal attempt to commit an offense in section 18-2-101(1), C.R.S. 2025. *People v. Riley*, 2015 COA 152, ¶¶ 27-30. Where the General Assembly provides that the mere act of *attempting to do something* constitutes a completed, as opposed to an inchoate, offense, "attempt" simply means an "act or an instance of making an effort to accomplish something." *People v. Johnson*, 2024 CO 32, ¶ 27 (quoting Black's Law Dictionary 158 (11th ed. 2019)) (interpreting "attempt" in the child enticement statute, § 18-3-305(1), C.R.S. 2025)). Thus, in this context, a defendant intentionally attempts to influence a public servant when it is their "conscious objective," § 18-1-501(5), C.R.S. 2025, to engage in an effort to accomplish their goal of influencing the public servant.

capture a larger subset of matters in which a person could reasonably influence a public servant.[4]

¶ 23    In light of these considerations, we conclude that the General Assembly enacted this provision to criminalize deceitful acts that could *potentially* influence a public servant. *See People v. Frysig*, 628 P.2d 1004, 1007 (Colo. 1981) ("The primary purpose in punishing attempts is not to deter the commission of completed crimes, but rather to subject to corrective action those individuals who have sufficiently manifested their dangerousness." (citation omitted)). This inference is supported by the fact that a person does not have to succeed in influencing a public servant to be convicted of this crime. *See People v. Sena*, 2016 COA 161, ¶ 16 ("[W]hether the public servant was actually influenced by the defendant's attempts is not an element of the crime."). And it

---

[4] This reading of the statute is further supported by *People v. Blue*, 253 P.3d 1273, 1277 (Colo. App. 2011). In that case, a division of this court described the elements of the crime of attempt to influence a public servant as "(1) an attempt to influence a public servant; (2) by means of deceit . . . ; and (3) with the intent to alter or affect the public servant's decision or action." *Id.* The phrase "concerning any matter which is to be considered or performed by [the public servant]" was not listed as an element, despite its presence in the statutory language at that time. § 18-8-306, C.R.S. 2010.

logically follows that the General Assembly would not treat differently a defendant who intended to influence a public servant, and took deceitful action to do so, but happened to mistakenly believe the particular public servant actually had control over the requisite decision. In our view, this reading "give[s] full effect to the intent of the General Assembly." *Griego*, ¶ 25.

¶ 24    With this in mind, we then assess whether the prosecution provided sufficient evidence that (1) Schmidt, (2) on or about March 16, 2023, (3) with the intent to affect any public servant's decision, (4) attempted to influence the public servant by means of deceit. We hold that there is sufficient evidence to support each of these elements.

¶ 25    As noted, neither party contests the district court judge's status as a public servant. And the prosecution offered evidence that the district court considered the public service letter as a mitigating factor during the resentencing process. And regardless of the subsequent determination that the district court judge lacked jurisdiction over the resentencing hearing, Schmidt nevertheless presented the forged public service letter *with the intent to affect the decision the judge was actively considering at that time*. For these

12

reasons, we conclude that the evidence is substantial and sufficient to support a conclusion beyond a reasonable doubt that Schmidt is guilty of attempting to influence a public servant. *See Gorostieta,* ¶ 16.

## C.    Forgery

¶ 26    Schmidt next contends the evidence was insufficient to prove forgery. Specifically, he argues that the public service letter did not have the necessary "legal efficacy" to fall within the definition of forgery, nor did it fall into one of the defined categories of written instruments within subsection (1)(d) of the forgery statute.

¶ 27    Section 18-5-102(1)(d), C.R.S. 2025, provides:

> (1)    A person commits forgery, if, with intent to defraud, the person falsely makes, completes, alters, or utters a written instrument that is or purports to be, or that is calculated to become or to represent if completed:
>
> . . . .
>
> (d) A public record *or* an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant.

(Emphasis added.)

¶ 28    "[W]hen the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to

13

the contrary." *Armintrout v. People*, 864 P.2d 576, 581 (Colo. 1993). Therefore, under subsection (1)(d), a written instrument must fall into one of two categories: (1) a public record or (2) an instrument filed or required by law to be filed or legally fileable in or with a public office or public servant. § 18-5-102(1)(d). We conclude that the public service letter was an instrument that was legally fileable with a public servant.

¶ 29    First, the public service letter is a written instrument, in that it is a "document . . . containing written or printed matter . . . used for purposes of reciting, embodying, conveying, or recording information, . . . which is capable of being used to the advantage or disadvantage of some person." § 18-5-101(9), C.R.S. 2025. Second, again, the district court judge is a public servant. The question, then, turns on whether the public service letter was "legally fileable." § 18-8-306. Significantly, there is no indication that the district court prevented Schmidt from tendering the document to the court or refused to put it in the file. To the contrary, the court accepted the document, and it is part of the file.

¶ 30    Schmidt, however, argues that the document was not filed "pursuant to a legal mandate" as required by *People v. Carian*, 2017

14

COA 106, ¶ 26. In *Carian*, the division interpreted subsection (1)(d) of the forgery statute under similar — but not identical — circumstances. There, the defendant submitted a falsified urinalysis report to his probation officer. *Id.* at ¶ 7. The division noted that, "in the context of subsection (1)(d), 'to file' an instrument must mean more than simply delivering it to a public office or a public servant." *Id.* at ¶ 24. Instead, the language "'filed or required by law to be filed or legally fileable in or with a public office or public servant' refers to those instruments actually delivered to a public office or public servant *pursuant to a legal mandate*." *Id.* at ¶ 26 (emphasis added) (quoting § 18-5-102(1)(d)). The division concluded that the probation officer, "while a public servant, was not mandated to receive and maintain urinalysis reports as required by subsection (1)(d)." *Id.* at ¶ 32. As a result, the division vacated the defendant's conviction for forgery. *Id.* at ¶ 36.

¶ 31     We do not agree that *Carian* is dispositive. First, the division's language appears to eliminate the distinction between *filed* and *fileable*. To the extent it does so, we disagree with the division and decline to follow its decision. *See People v. Martinez*, 2022 COA

15

142, ¶ 24 (one division of the court of appeals is not bound by the decision of another). Moreover, *Carian* is distinguishable because of the recipient of the deceitful document at issue. It is far from clear that providing a document to a probation officer is an act of "filing" a document. But there can be no doubt that tendering a document to the court for purposes of placing that document into the court record amounts to "filing" that document. *See* Black's Law Dictionary 768 (12th ed. 2024) (defining the verb "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record").

¶ 32   In short, because there was no legal impediment to Schmidt submitting the public service letter to the court for inclusion in the court file, it was legally fileable. Consequently, we conclude that there was sufficient evidence to convict Schmidt of forgery under section 18-5-102(1)(d).

### III.   Character for Truthfulness

¶ 33   Schmidt contends that the trial court erred by refusing to allow any witnesses to testify about his character for truthfulness. We agree and, therefore, reverse his convictions and remand for a new trial.

### A. Standard of Review and Applicable Law

¶ 34 "We review a trial court's evidentiary rulings for an abuse of discretion." *Campbell v. People*, 2019 CO 66, ¶ 21. A trial court abuses its discretion when it misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. McLaughlin*, 2023 CO 38, ¶ 22. But "[w]e review an alleged violation of constitutional rights de novo." *People v. Scott*, 2021 COA 71, ¶ 12.

¶ 35 We review trial errors of a constitutional dimension that were preserved by objection for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11. Constitutional harmless errors "require reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "Stated differently, the question 'is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *Zoll v. People*, 2018 CO 70, ¶ 18 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

17

¶ 36    We review nonconstitutional trial errors that were preserved by objection for harmless error. *Hagos*, ¶ 12. "Under this standard, reversal is required only if the error affects the substantial rights of the parties," *id.*, which occurs "if the error 'substantially influenced the verdict or affected the fairness of the trial proceedings,'" *id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 37    As a general rule, character evidence is not admissible under CRE 404(a), but certain exceptions apply. CRE 404(a)(1) "allows an accused to introduce evidence of a 'pertinent' trait of character at trial." *People v. Miller*, 890 P.2d 84, 94 (Colo. 1995) (emphasis omitted) (quoting CRE 404(a)(1)). A defendant's truthfulness is a pertinent trait if "[t]he offense charged is *crimen falsi*; *i.e.*, a lie by the defendant is an element of the crime." *Id.* at 92 (quoting *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981)). Alternatively, CRE 608(a) "permits the admission of opinion or reputation evidence of a witness's character for truthfulness, but only 'after the character of the witness for truthfulness has been attacked by opinion or reputation evidence.'" *People v. Serra*, 2015 COA 130, ¶ 62 (quoting CRE 608(a)). And "[m]erely questioning a witness's

credibility does not necessarily constitute an attack on that witness's overall character for truthfulness." *Id.* at ¶ 65.

### B.     Additional Background

¶ 38     Following Schmidt's testimony, defense counsel asked to call three witnesses to present evidence of Schmidt's truthful character. Defense counsel argued that "the cross-examination of Mr. Schmidt was nothing but attacking his character for truthfulness" and therefore opened the door to providing rebuttal witnesses to testify to his character for truthfulness under CRE 608.

¶ 39     Relying on *People v. Serra,* 2015 COA 130, the court noted that to trigger the admission of character evidence under CRE 608, questions aimed at a witness "must do more than attack the truthfulness of the witness's testimony, they must attack [their] general propensity to tell the truth." *Serra,* ¶ 66. The court asked defense counsel to explain what he perceived to be an attack on Schmidt's general propensity to tell the truth. Defense counsel responded, arguing that "this whole case is about dishonesty" and that the charges, by nature, "are allegations that he's a dishonest person." Defense counsel reemphasized this point later in the discussion, highlighting that "this case is very different than an

assault or trespass case, where there might be impeachment" because Schmidt's charges, "by their nature, are attacks on character," and honesty is "an essential element of the charge."

¶ 40 The court ultimately barred the use of Schmidt's witnesses to introduce evidence of his character for truthfulness. When it presented its ruling, the trial court acknowledged that it was possible that "the nature of the charge should be taken into account in determining whether character evidence of truthfulness . . . should be received" but that it was unaware of any case law requiring as much. The court also noted that the "witnesses were not timely disclosed" but found that it was unclear whether the prosecution was prejudiced by the late disclosure. The prosecution argued that it "did not have an opportunity to properly investigate these individuals" due to the late disclosure. The court did not enter a ruling on whether the late disclosure prejudiced the prosecution and instead confirmed its ruling under CRE 608.

### C. Analysis

#### 1. Preservation

¶ 41 The parties disagree as to what portions of Schmidt's argument are preserved. The People concede that Schmidt

20

preserved his argument under CRE 608. But they contend that Schmidt did not preserve his argument under CRE 404(a)(1). Schmidt argues "trial counsel preserved this error by arguing the substance of CRE 404(a)(1)."

¶ 42 "We do not require that parties use 'talismanic language' to preserve particular arguments for appeal . . . ." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004). Instead, a party need only "present the trial court with 'an adequate opportunity to make findings of fact and conclusions of law' on the issue." *Martinez v. People*, 2015 CO 16, ¶ 14 (quoting *Melendez*, 102 P.3d at 322). As noted, Schmidt argued at various points that the nature of the charges inherently involved his character for truthfulness. And the court made findings on that issue when it determined that the type of case did not impact the admission of character evidence. We conclude that Schmidt preserved his argument under CRE 404(a)(1). *See People v. Coughlin*, 304 P.3d 575, 582 (Colo. App. 2011) ("Even if an objection to evidence does not specifically identify the rule underlying the objection, it is nonetheless sufficient to preserve an issue for appeal if the objecting attorney presents

arguments or utilizes language that alerts the trial court to the impending error.").

### 2. *Crimen Falsi* Offenses

¶ 43    As noted, *supra* Part II.B, one element of the crime of attempt to influence a public servant is influencing any public servant "by means of deceit." § 18-8-306. Similarly, Schmidt's forgery charge required proof of Schmidt's intent to defraud and his act of tendering a false document. *See* § 18-5-102(1)(d). And to defraud is to act by deceit. Black's Law Dictionary 535 (12th ed. 2024) (defining "defraud" as "[t]o cause injury or loss to (a person or organization) by deceit").

¶ 44    "[D]eceit" is defined as "[t]he act of intentionally leading someone to believe something that is not true; an act designed to deceive or trick." Black's Law Dictionary 509 (12th ed. 2024). For purposes of determining whether each of these offenses is a *crimen falsi*, we see no distinction between deceit and a lie. After all, "lying" is defined as "mak[ing] an untrue statement with intent to deceive." Merriam-Webster Dictionary, https://perma.cc/LA3Z-GWHL. And because deceit is at the core of both attempting to influence a public servant and forgery, it follows that Schmidt's

22

alleged truthfulness was a pertinent trait, *see Miller*, 890 P.2d at 94, and that he should have been permitted to offer evidence of that character trait, *see* CRE 404(a)(1).

¶ 45  Because the trial court misapplied the law, it abused its discretion. *See McLaughlin*, ¶ 22. The question then becomes whether the error in excluding this testimony requires reversal.

### 3.   Constitutional Harmless Error

¶ 46  The People contend that we should review for nonconstitutional harmless error because "the constitutional right to present a defense is not absolute," and the "right is abridged 'only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence.'" *See Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009). The People argue that Schmidt was permitted to testify about his own character, and, therefore, his constitutional right was not abridged.

¶ 47  But the constitutional right to present a defense includes "the right to call witnesses on [a defendant's] behalf," *People v. Gonzales-Quevedo*, 203 P.3d 609, 611 (Colo. App. 2008), which was clearly violated when Schmidt's witnesses were barred from testifying. Indeed, as the United States Supreme Court has

23

observed, "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see also Golob v. People*, 180 P.3d 1006, 1013 (Colo. 2008) ("Because a criminal defendant has the right to call witnesses in [their] defense, abridgment of that right is subject to a constitutional harmless error analysis."); *Melendez*, 102 P.3d at 319 (applying constitutional harmless error review to exclusion of defense witnesses' testimony after he violated a sequestration order).

¶ 48     And given the fact that Schmidt's character for truthfulness was directly related to the crimes charged, his proposed witnesses would have tested significant prosecutorial evidence that Schmidt's testimony alone was ill-equipped to combat.

¶ 49     In other words, the erroneous exclusion of Schmidt's character witnesses effectively deprived him of the only means of effectively challenging the prosecution's evidence regarding a significant issue in the case — his character for truthfulness.  Therefore, we apply the constitutional harmless error standard to the exclusion of Schmidt's witnesses and will reverse absent a showing that the

error was harmless beyond a reasonable doubt. *See Golob*, 180 P.3d at 1013.

¶ 50      The proposed witnesses were set to testify that they had "formed an opinion of Mr. Schmidt as having an honest character" after working with him in a professional capacity for several years. Through this testimony, Schmidt may have been able to rehabilitate his character for truthfulness, which — again — was at issue due to the nature of the charge. Moreover, the testimony would have further supported Schmidt's defense theory that he did not know that the public service letter was forged when he submitted it to the court and therefore did not intend to deceive the judge. Thus, we cannot say that the exclusion of witness testimony addressing Schmidt's character for truthfulness was surely unattributable to the guilty verdict. *See Zoll*, ¶ 18.

### D.     Untimely Disclosure of Witnesses

¶ 51      Finally, noting that we can affirm a judgment on any ground supported by the record, *see People v. Manyik*, 2016 COA 42, ¶ 69, the People argue that we should do so here because the trial court could have properly excluded the witnesses as a discovery sanction. We decline to take this step.

¶ 52    True, a trial court generally has discretion, after properly considering the attendant circumstances, to exclude evidence that was not timely disclosed. *See People v. Pronovost*, 773 P.2d 555, 558 (Colo. 1989) (enumerating the factors a court must consider when determining whether to exclude a criminal defendant's evidence based on a late disclosure). But after permitting the prosecutor to explain how she was prejudiced by the late disclosure, the court neither found prejudice nor excluded the witnesses as a sanction. Significantly, the court declined to do so even as an alternative ground, notwithstanding its acknowledgment that its decision to exclude the witnesses was "a very close call."

¶ 53    The People argue that the court would not have abused its discretion had it chosen to exclude the witnesses as a sanction. But based on the record, we are unable to determine if that is true. The trial court did not make findings on — or, as far as we can tell, even consider — the *Pronovost* factors. As a result, the record does not provide an alternative basis for us to affirm. (In any event, we note that any prejudice flowing from the inability to prepare for the witnesses is necessarily alleviated now; on remand, the People will

26

have ample notice of these witnesses and time to prepare to cross-examine them.)

¶ 54 Because the trial court erroneously interfered with Schmidt's ability to mount a defense and that error was not harmless, Schmidt is entitled to a new trial.

### IV. Testimony Regarding Medical Diagnoses

¶ 55 Schmidt also contends that the trial court violated his constitutional right to testify and to present a complete defense by limiting his trial testimony regarding his own medical conditions. However, because we do not know if, or in what context, this issue will arise again on retrial, we decline to address it.

### V. Disposition

¶ 56 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE WELLING and JUDGE LIPINSKY concur.